## HUTCHINSON v. THE COMMONWEALTH. .

No action lies on the official bond of a prothonotary to recover the share of the Commonwealth of those fees received by him after his removal from office.

Under the act of 1811, a settlement of accounts with a public officer by the auditor-general is conclusive even though, on the face of the account, it is apparent that an allowance authorized by the act of Assembly was not made.

IN error from the Common Pleas of Dauphin.

*June* 24. Debt on an official bond against Hutchinson, late prothonotary of the District Court of Philadelphia. The condition of the bond, which was joint and several, was, *inter alia,* that he would "faithfully account for and pay over into the state treasury all public moneys which shall come to his hands from time to time, *during his continuance in the said office.*"

The action was to recover fifty per cent. of his fees received from his successor in office after defendant had retired. The defendant gave in evidence an account settled by the auditor-general, in 1830, at which time he held the office of prothonotary, in which he had been charged with fifty per cent. of the fees by him received, which were not free from taxation, without an allowance for the expenses of the office, for the purpose of showing he had been overcharged the sum of $433 34, which he claimed to deduct from the present balance. An objection was taken that the last settlement was conclusive, although there were errors, on which ground the evidence was rejected.

The court (ELDRED, P. J.) directed a verdict for the plaintiff. The errors assigned were: 1. The rejection of the evidence. 2. The charge that an action could be maintained on an official bond though the claim was on account of fees received after removal from office. This had been the subject of a prayer for instructions.

*McCormick,* for plaintiff in error.—Commonwealth *v.* West, 1 Rawle, 29, decides there can be no recovery on the official bond for this money, and there is no distinction in the construction of bond as to the liability of principal and surety; 15 Serg. & Rawle, 107.

The defendant was entitled to $1500, in the first instance, by the act of 1810, and the balance only was taxed fifty per cent. for the benefit of the state. The account settled by the auditor-general is conclusive, unless there is an appeal within the time limited, but that, like all other similar provisions, extends to matters *dehors* the account, not to simple errors of calculation apparent. The

remark in Commonwealth *v.* Reitzel, 9 Watts & Serg. 109, is but a *dictum,* not a decision.

*Lesly, Briggs,* and *Parke,* contrà.—Under the act of 1811, this account was conclusive, as was decided in conformity with the express words of the statute in Commonwealth *v.* Reitzel.   During the time this account covered, the defendant was entitled to no allowance, and that for the former years had been disposed of by the settlement.   It was conceded in Commonwealth *v.* West, 1 Rawle, 29, that the principal was liable, and on that ground the action was brought against him alone.   There the bond was joint; here it was also several.   The act of 1818, which is to be construed prospectively, expressly creates the liability; 17 Serg. & Rawle, 255.

*June* 30.   BELL, J.—A principal question presented by this record is, whether the action is well brought upon the official bond of the defendant below.   Upon this point we are unable to distinguish it from the case of the Commonwealth *v.* West, 1 Rawle, 29, with which it is identical in principle; the only difference, in fact, being that there the suit was against the sureties, and here it is against the principal.   But that this difference can give rise to no diversity of construction of the instrument, is very clearly shown by the reasoning as well of the Chief Justice, who delivered the opinion of the court in that case, as of Mr. Justice Huston, who dissented, in the ultimate conclusion, from the majority of his brethren; and by Roth *v.* Miller, 15 Serg. & Rawle, 107, and the cases there cited.   The general rule is as undoubted as it is reasonable, that there cannot be one construction as to one obligor, and a diverse one as to another obligor.   The obligation must be held to speak the same language in respect to all the parties to it, whether principals or sureties; for there is no equity residing in the latter which will entitle them to assign to the words used a meaning differing from that they convey, if regarded as employed by the former only.   An examination of the cases on this subject will show that whenever a surety has been permitted to escape, leaving the principal still liable, it has been because of some special provision or defect in the bond itself, or some merit in the surety, or demerit in the obligor or his assigns, outside the instrument. Looking to the writing alone as the evidence of the contract, it is presumed no case can be found—none certainly was shown on the argument—in which, on the same words, a construction has prevailed releasing the surety, yet holding the principal in the obliga-

tion still bound. The truth is, the law regards all the parties to a specialty with an equal eye; and it is only where some things peculiar intervene, which, proved, make it harsh and unjust to hold a surety strictly to his agreement, that equity interferes to absolve him. If this doctrine be correct—and I know of no ground on which it can be controverted—the question propounded is already decided against the Commonwealth, by an authority we are not at liberty to disregard, however inclined we might feel, on the score of convenience, to hold the officer liable under his bond. The condition of the obligation is precisely similar to that in the Commonwealth *v.* West, and seems to have been framed under the act of 10th March, 1810, which relates solely to fees received by the officer while actually in office. The form of the bond has undergone no alteration since the act of 24th March, 1818, extending his liability to account for such fees as are received after the determination of the term of office. If the public interests demand that the prothonotaries and clerks of our courts should give a bond to the Commonwealth, binding them to render an account of fees and emoluments received after retiring from office, one may be easily framed without further legislative provision; for I know of no statute which prescribes, in terms, the form of the condition to be appended to these official obligations, or at least none which would exclude such a provision as might be desirable under the act of 1818.

In the case in hand, no inconvenience will be felt, as the defendant is undoubtedly liable to the Commonwealth under the provisions of the last-mentioned statute, and by virtue of the settlement of his accounts made by the auditor-general. As the case may again be presented for adjudication, in an action so brought, it is proper to consider the second ground of defence assumed in the court below, the disaffirmance of which has been assigned for error.

The defendant below offered to show, by a certain settlement of his account made by the auditor-general, in accordance with what was thought to be the true construction of the act of 1818, prior to the decision of the Commonwealth *v.* Murdoch, 3 Watts, 382, that he had been required to pay, and actually did pay, into the public treasury a much larger proportion of the fees received by him after he left office, than by law he was compelled to pay; which excess he claimed to have deducted from the amount ascertained to be due from him by the last settlement. The court refused to receive the evidence, on the ground that such settlements, when approved by the state treasurer, and unappealed from by the

officer, are conclusive upon him, and therefore not subject to revision by another tribunal.

The settlement offered in evidence was duly made on the 19th of April, 1830, was acquiesced in by the defendant below, by payment into the public coffers of the amount demanded, and never called into question until the trial of this cause. It undoubtedly proceeded upon a misconstruction of the act of 1818, and involved the error of not allowing the officer the full amount of $1500 for the current year, before subjecting his receipts to the deduction of 50 per cent. required by law to be paid to the Commonwealth. The operation of this mistake was to take from his pocket the sum of $433 39, more than was justly due from him, and this was the mistake he claimed to have corrected upon the trial of the cause. But was this permissible? This depends upon the right construction of the first, eleventh, and twelfth sections of the act of 30th April, 1811, which are cited at large in the case of Commonwealth *v.* Reitzel, 9 Watts & Serg. 109, and therefore need not be repeated here. Speaking of them in that case, Mr. Justice Kennedy said, when delivering the opinion of the court, "It is very apparent from the various provisions of the act, that the legislature intended to make a settlement of the accounts mentioned in it, by the auditor-general and state treasurer in the manner therein directed, final and conclusive, unless appealed from within the time allowed by the act for that purpose." This is said by counsel to be merely a *dictum*, not being a point in the case. But we do not think so, for the subject then under consideration called for a construction in this particular of the act of 1811, and therefore the learned and accurate judge who pronounced the judgment did not travel out of the record to express the conclusion I have quoted. Were this, however, otherwise, we are satisfied upon reflection, apart from authority, the remark is well founded. For the purpose of settling the accounts of the persons named therein, the act of 1811 confers upon the auditor-general and state treasurer a judicial power, and gives to their decisions, within the scope of the authority vested in them, the force and effect of a judgment which, unappealed from within the period prescribed by the statute, becomes final, and cannot afterwards be questioned either collaterally or directly in an action brought to recover the amounts thus ascertained to be due. That such a power should be lodged somewhere is essential to the interests of the Commonwealth; for without it, it would be frequently very difficult, if not impracticable, to approach a correct conclusion in the many complicated pecuniary transactions which annually take place be-

tween the state and official and private persons. Care is taken that, in the exercise of this power, the individual called to account shall not be subjected to the blunders, the caprice, or the injustice of the official agents of the Commonwealth; for the act stipulates for due notice to the party to be affected by the settlement, in order that, if dissatisfied, he may take his appeal to the Court of Common Pleas. The object of the appeal thus given is to enable the appellant to open the account settled by the accounting officers, and subject it to the scrutiny of a tribunal armed with all the powers necessary to a critical investigation. But what if no appeal be taken? In such case the implication that the lawmakers intended the settlement to be conclusive is necessary and irresistible. If this were not so, and the complaining party were at liberty to impeach the action of the auditor and treasurer in an action subsequently brought, the appeal provided by the statute would be altogether unnecessary, and the attempt to settle an account, in a large majority of litigated cases, end where it began. 'It is, however, insisted that the conclusive effect of such a settlement is to be confined to errors *dehors* the evidence of settlement, and does not embrace and protect such as appear on its face. But we see no warrant for this distinction in the language or spirit of the act of Assembly. By declining to appeal, the party concedes the correctness of the settlement in every particular, and he cannot afterwards be permitted to aver that his acquiescence was induced by misapprehension of the law. Admitting this to be true, it is beyond the power of the ordinary tribunals to afford redress. If injustice has been done, the only remedy is to be found in the exercise of the extraordinary power of the legislature.

The opinion of the court is, that for the reasons given, the proffered evidence was rightly rejected. But as this action upon the official bond of the defendant below cannot be sustained, the judgment must be reversed upon that ground.

Judgment reversed.