## The County of Schuylkill *versus* The Commonwealth.

By the Act of 29th April 1844, the several counties of the state are made primarily liable, as principal debtors, for the *quota* of state tax assessed upon the property within them respectively.

If the *quota* of any county be not paid by the time fixed by that act, it is primarily liable for the whole amount of the tax, and not merely for the five per cent. interest.

The provision of the 40th section of the act, requiring the state treasurer to charge on his books, against the county, the amount remaining unpaid, if the *quota* be not paid before the 2d Tuesday of January in each year, is merely directory; and an omission to make such charge will not affect the liability of the county.

The insufficiency of the bond taken from the county treasurer, for the faithful performance of his duties in behalf of the Commonwealth, approved by the judges of the Court of Quarter Sessions, will not release the county from its liability to the Commonwealth. The state is not to be prejudiced by the *laches* of its agents.

If a payment be made by a county treasurer, on account of his indebtedness to the Commonwealth, without any distinct appropriation of the amount, it is competent for the accounting officers to appropriate it to the payment of the other indebtedness of the treasurer, for which the county is not liable.

ERROR to the Common Pleas of *Dauphin county*.

This was an appeal by the County of Schuylkill from the settlement of her accounts with the Commonwealth, made on the 26th November 1858, by the auditor-general and state treasurer, and resulting in a balance of $13,788.96 against the county. From this settlement the county appealed; the appeal was duly entered in the Common Pleas of Dauphin county; and it was agreed, that the cause should be tried on the specifications filed, without declaration or other pleadings. The specifications were as follows:—

In the matter of the settlement of the account of the County of Schuylkill with the Commonwealth of Pennsylvania, dated the 26th November 1858, by the auditor-general and state treasurer, the said county of Schuylkill doth hereby, this 21st day of January, 1859, appeal from said settlement to the Court of Common Pleas for the county of Dauphin, and doth accompany this appeal with the following specifications of objections to the said settlement, which appeal a d specification the auditor-general

[The County of Schuylkill *v.* The Commonwealth.]

is hereby requested to file in his office, in pursuance of the 11th section of the Act of 30th March 1811, viz. :—

1. Because no credit is given in said settlement for the sum of $10,000, which was paid by the sureties on the official bond given by S. K. M. Kepner, the treasurer of said county of Schuylkill for the years 1856 and 1857, for the payment of the state tax collected by said treasurer into the treasury of the Commonwealth, and for which amount of $10,000 the said Commonwealth obtained judgment in the Court of Common Pleas for the county of Dauphin, and collected the same before the date of said settlement.

2. No credit is given in said settlement for the sum of $17,287.01 which said county of Schuylkill alleges is due from said Commonwealth to said county for taxes paid by the said county into the treasury of the Commonwealth levied, assessed, and collected from the years 1844 to 1853 both inclusive by the assessment of trades, occupations, and professions not exceeding in value each $200 upon the taxable inhabitants in the several townships and boroughs in said county, and which amount of $17,287.01 so raised as aforesaid, is claimed by the said county was paid to the Commonwealth by mistake, and the said county claims a direct credit therefor as well as a separate cross-demand by way of set off for the same.

3. The said county claims a further credit of $851.71, being an excess to that amount on the amount of the state tax levied according to law for said county for the year 1856 upon the assessable property in said county. The whole amount levied as aforesaid being but $35,777.26, whereas the amount charged in said settlement is " $36,628.97, as affixed for said county by board of revenue commissioners." And the said county alleges and avers that if the board of revenue commissioners for 1854 did increase the aggregate value of the assessable property in said county in order to equalize taxation, that no notice of such increased valuation was ever furnished to the county commissioners of said county by the state treasurer, as is required by the 39th section of the Act of 29th April 1844.

4. The said county of Schuylkill claims and objects to said settlement, that said county is not liable to said Commonwealth for the said tax for the years 1856 and 1857, or either, under any law of this Commonwealth, and that Samuel K. M. Kepner, the late treasurer for the county of Schuylkill, is alone responsible therefor, because as said county claims the said S. K. M. Kepner, treasurer, as aforesaid, was by law the agent of said Commonwealth, and did collect the state tax, levied and assessed in said county for the years aforesaid (as is supposed by said county), for the said Commonwealth and not the said county, that said Commonwealth recognised and approved such agency by keeping an account with said S. K. M. Kepner, treasurer as aforesaid, for said taxes, as

well as for all other state taxes, militia fines, and license fees paid said treasurer and auditor-general of said Commonwealth, and without discrimination in such account, and wherein said Kepner, treasurer as aforesaid, is duly charged with said taxes for 1856 and 1857, beside such other state taxes, militia fines, and license fees, and for all of which said taxes, fines, and fees, said auditor-general and state treasurer settled an account with said S. K. M. Kepner, treasurer as aforesaid, on the 10th day of February, 1858, and adjudged a balance of $43,503.35 against him, and which said balance includes the said balance of $13,788.96, adjudged against said county by the aforesaid settlement with said county.. And because said Commonwealth did not, prior to the 26th November 1858, make any charge upon the books of the auditor-general or state treasurer for said taxes for said years 1856 and 1857 against said county. And because no precept was issued by the state treasurer to the commissioners of said county requiring them to assess and collect the state tax for said years, nor was any copy furnished to them of any increased valuation made by the board of revenue commissioners to the amount of the assessments by the several assessors in and commissioners for said county, for the years aforesaid, as required by the Act of 28th April 1844.

The facts of the case are fully stated in the following charge to the jury, delivered in the court below, by PEARSON, P. J.:—

" An appeal has been taken by Schuylkill county from the decision of the accountant department, charging it with arrears of taxes for the years 1856–7. The board of revenue commissioners assessed against Schuylkill county, as its share of state taxes to be levied on the real and personal estate for the year 1856, $36,628.97, and for the year 1857, $36,444.07, making in all for the two years, $73,073.04. On this charge there was paid during the time, $59,284.08, leaving a balance due the state on account of the taxes aforesaid, of $13,788.96, as settled on the 26th November 1858.

" S. K. M. Kepner was elected treasurer of Schuylkill county, in October 1855, and gave bond to the Commonwealth, approved by the court of that county, in the sum of $10,000, conditioned to perform his duty. as treasurer, during his term of office. Mr. Kepner collected on account of licenses and other matters for the state some $20,000 ; over $10,000 of which remained unpaid until collected from his sureties on his official bond.

" On the 23d September 1858, judgment was recovered against Kepner for the amount due by him to the Commonwealth, amounting to $38,417.56, including state tax on real and personal property, and also the other money received for licenses, &c., and on the same day against the sureties in his bond for the penalty

[The County of Schuylkill v. The Commonwealth.]

of $10,000. This judgment with the interest, it is admitted, was paid to the attorney-general, by money furnished by Kepner in relief of his sureties, in the fall of 1858, while a *fi. fa.* was in the hands of the sheriff for its collection, and by the attorney-general paid into the state treasury on the 28th of October, of the same year. The money was applied towards extinguishing Kepner's indebtedness on account of licenses, militia fines, &c. Exception has been taken to such appropriation by the defendant, which will be adverted to hereafter.

" The first question raised relates to the liability of Schuylkill county for its *quota* of state tax as assessed against it by the board of revenue commissioners under the Act of April 29th 1844. The 39th section of that act makes it the duty of the state treasurer, on receipt and filing the record furnished by the revenue board, to transmit to the commissioners of each county a copy of the valuation of the property of said county, and to issue his precept requiring them to assess and collect the state tax on the amount so transmitted. This duty the law presumes the officer has duly performed, and no question has been raised on that point, and could not be, as the tax was duly assessed, collected, and paid to the county treasurer. The 40th section makes it the duty of the commissioners to cause the taxes to be collected, and of the county treasurer to pay over the same as fast as collected to the state treasurer, and the act then declares 'if the *quota* of any county be not paid over before the second Tuesday of January, of each year, to the state treasurer, then and in such case, the amount remaining unpaid, after deducting such commissions. as are or shall be allowed by law for the collection of the same, shall be charged against said county, on the books of the state treasurer, and shall bear an interest of five per cent. till paid.' The same section provides that if the money be not collected it shall be paid out of any money in the treasury, whether received for state or county tax. And if collected, but not paid over by the county treasurer, that officer is made personally responsible *to the county*, for any interest which may accrue on the unpaid balance.

" We consider it perfectly clear that the county is made responsible to the state for the *quota* of tax assessed against it, from which it cannot be discharged but by payment in the state treasury. If the collectors fail to collect the taxes due the state, the county treasurer must pay the amount out of any money in the treasury. If the taxes are collected, but not paid over by the county treasurer, he is responsible for the interest which the county may be obliged to pay, not liable to the state, but to the county.

" The defendant contends that it is discharged because the bond taken from the treasurer under the 34th section of the Act of April 16th 1834, was insufficient, the amount being fixed by the

[The County of Schuylkill *v.* The Commonwealth.]

judges of the court, who are state officers, and if defective from any cause the loss must fall on the state. That the county commissioners had no control over the subject, could neither object to the amount of the obligation, the character of the sureties, or take any measures to have the same made good. Although the judges are nominally, and for many purposes, called 'state officers,' yet they, like all other officers in Pennsylvania, owe their power to the people. They are elected by the same citizens who elect the county commissioners and county treasurer. If either fail to perform their duty, the loss occasioned thereby will very properly fall on their constituents who elected them; although under the act referred to, the county commissioners could not control the amount of the bond, or judge of its validity, yet they are quite as likely as the state treasurer or the auditor-general to know whether the county treasurer is embezzling public money, and the public interests likely to suffer thereby; and could at any time have made complaint thereof to the judges of the court, under the 8th section of the Act of the 27th of May 1841, and had the officer removed or additional bail given. The state treasurer, it is true, has a special and limited power under the Act of May 7th 1855, but it is confined to the case of the county treasurer becoming insolvent, or the sureties dying or absconding, and even then is only concurrent with that of the commissioners. The insufficiency will not discharge the county.

"It is contended, that to hold the county responsible for the arrears of taxes not paid over, it must be charged against the county on the books of the state treasurer, immediately after the second Tuesday of January, in each year, and an omission to make the charge according to the act will discharge the county. It is very true, that the charge should have been so made, and in failing to make it the state treasurer neglected his duty. Schuylkill county, in the present case, was not charged until the 26th November 1858, but that will not release it from liability. We look upon that part of the act as *merely directory*, and the Commonwealth cannot suffer from the neglect of her officer to perform a duty of this character; *non constat* that the county suffered by the neglect.

"It has long been held, that mere omission to bring a suit, or make a settlement by public officers, will not discharge sureties in an official bond: 9 *Whart.* 720; 12 *Id.* 505; 3 *Mason* 446; 1 *Peters* 325; 11 *Whart.* 184. And even when money was paid out which should have been retained in the state treasury, the surety was not thereby discharged: 1 *Harris* 617. The general principle, long and well established, that the Commonwealth cannot suffer through any neglect or omission on the part of its officers, covers many of the delinquencies complained of by the defendant in this case.

[The County of Schuylkill *v.* The Commonwealth.]

"It is also urged, that in collecting state taxes, the county treasurer acts as agent for the state, and not for the county, and no advantage can be taken by the state of the delinquency of her own agent. The law in force since 1834 required the county treasurer to collect state taxes, and to give bond for the faithful performance of that portion of his duty. The people of the county alone have authority to select the individual who shall perform that duty, and when selected none other can be employed. They must take care who they choose for that purpose. To our mind, there is not even the semblance of hardship in making the same persons who select the agent, responsible for his acts. It is no new duty thrown on the officer after his election; the people choose him with full knowledge that he must receive the state as well as the county funds. The liability of the county is not, however, put on that position, but on the positive words of the Act of Assembly, which holds the county responsible for the taxes until paid into the state treasury.

"The defendant also avers, and has proved, that for several years, and from 1844 to 1853, it assessed and collected a considerable amount of taxes from citizens, whose annual income, from their occupation, was less than two hundred dollars, and the same was paid into the state treasury. This tax, being illegal, is claimed as a set-off in the present case. There is one insuperable objection to allowing this as an off-set; it is not proved, or even averred, that the tax, so illegally collected and paid over, was in addition to the *quota* regularly and legally due by Schuylkill county; without showing that the county paid more money into the state treasury than was legally due, there could be no pretence to recover it back, or to set it off against a legal claim.

"The state collected ten thousand and fifty dollars from the bail of Kepner, and gave credit therefor on his indebtedness for money received for licenses, and other matters for which the county of Schuylkill never was liable to the Commonwealth. The defendant now claims to be subrogated to the rights of the state on that judgment, or that the money received in its discharge shall be credited in the present action, or if it cannot be allowed in whole, that it shall be applied *pro rata* to the whole indebtedness. There can be no subrogation, as the debt is discharged by actual payment, and the money legally received by the creditor. When Kepner paid the money, it was in relief of his bail, which was probably his first and only object. He might have directed that it should be applied to the tax on the real and personal property in preference to his other indebtedness, but he did not. Failing to make any application, it was the right of the receiver to apply it. Neither doing so, the law would make the application in the same way it might be fairly supposed the parties would—first according to the interest of the debtor, but it being

indifferent to him, according to that of the creditor. Kepner had no interest; it was indifferent to him, as both debts were equally obligatory. The state was deeply interested, having the security of Schuylkill county for the one debt, and none whatever for the other. The law presumes that the Commonwealth officers would apply the money according to the interest of the state, and therefore it makes that application. See Harker *v.* Conrad, 12 *S. & R.* 301.

"The next question raised is for the decision of the jury; all those arising heretofore have been decided by the court. The defendant urges that there was an actual appropriation of the money to the state tax by the officers of the Commonwealth, and that the application was afterwards changed. This depends on the entry on the treasury day-book, the receipts given in evidence, and the testimony of W. D. Boas. (Here the court called the attention of the jury to that portion of the evidence, and further instructed them.)

"The attorney-general, as a receiving officer of the Commonwealth of moneys in suit, could have appropriated this payment; we have no evidence that he did it when made to him by Mr. Hughes, and his receipt is believed to be general, for so much money in full of the judgment. When handed over to Mr. Boas, the first clerk at the treasury, he entered the credit, as he says they most generally do, to '*state tax*.' If the correction was made as soon as discovered by the state treasurer, the auditor-general or attorney-general, and that occurred on the same day of the entry, it was a right they had to so order. The entry might be treated as an unauthorized act of the clerk, not binding on the state unless acquiesced in. If suffered to stand for some time, it would be strong evidence of acquiescence, and binding. The receipts given, having the same date as the entry, are (if made at the time they bear date, and such is the presumption unless disproved), strong evidence that the subsequent application to retailers and tavern licenses was made on the same day. Mr. Boas cannot recollect when the receipts were given, but says that the attorney-general and Mr. Wallace, first clerk in the auditor-general's office, told him the money was misapplied. He thinks the change was made before he gave the receipts, or at the same time. You will judge how this was, and whether the attorney-general, on discovering the entry thus made, directed it to be corrected, and took the receipts in the form produced. He had a right so to do, if done soon after the entry on the same day; and he had a right to decline accepting receipts in any other form. The state treasurer could direct the entry to be corrected, if done at once, *promptly*. You must determine when and under what circumstances the change was made, and if done soon after the

[The County of Schuylkill *v.* The Commonwealth.]

entry, especially if on the same day, as the receipts tend to show, you will allow no part of the ten thousand dollars as a credit to Schuylkill county. If not done promptly, but acquiesced in for some time, the original entry must stand, and the ten thousand dollars must be deducted from this claim.

"The state is entitled to interest at the rate of five per cent. per annum, from the time the treasurer received the money, not a single charge of five per cent.; such we take to be the meaning of the 40th section of the Act of 1844. And interest must be charged on whatever balance you find against the county, from the expiration of three months from the date of settlement."

The defendants' counsel presented the following points, upon which they requested the court to charge the jury:—

1. That the state tax, assessed upon real and personal property, in the county of Schuylkill, in the years 1856 and 1857, was for the use of the Commonwealth, and belonged to the state the moment it was paid by the owners of the property charged respectively; that the county treasurer was, as to the receipt of this tax, the agent of the Commonwealth; that the Commonwealth, through its officer, had the right to protect itself for the payment and collection of the whole of this tax, by requiring bond of S. K. M. Kepner, the county treasurer of said county for said years, with sufficient sureties; and that it appearing that the commissioners of said county had caused the full amount of tax to be levied according to the adjustment and valuation, made by the board of revenue commissioners for said county, and the same to be placed in the hands of the collectors for that purpose, that said county had discharged its full duty in the premises, and the plaintiff cannot recover in this suit.

2. That if the jury believe the sum of over $72,000 state tax was received and collected by S. K. M. Kepner, as county treasurer, for the years 1856 and 1857, the county of Schuylkill cannot be made liable in this suit for any portion of the amount so received and collected by said county treasurer.

3. That as the 34th section of the Act of 15th April 1834 makes it the duty of the county treasurer to give bond to the Commonwealth, with sufficient security, to be approved by the officers of the Commonwealth, in such penalty as said officers shall deem sufficient; that as the commissioners of the county had no control over the bond given by Kepner, treasurer as aforesaid, to the Commonwealth; that as it appears the Commonwealth, through its officers as aforesaid, exacted from Kepner a bond in the penalty of but $10,000 (less than one-third of the quota of said county for either of the years 1856 and 1857); that the Commonwealth cannot enforce any liability upon the county of Schuylkill, as claimed in this suit.

[The County of Schuylkill *v.* The Commonwealth.]

4. That it was the duty of the Commonwealth to have required a bond with security in a penal sum at least equal to the amount of the state funds that would probably come into the hands of said Kepner, during the whole of either of the years during his official term; that any bond, so taken, would have enured to the use of the county, and that the Commonwealth, having collected the sum of $10,000, the full penalty of such bond, from the sureties of Kepner, after the judgment against Kepner, cannot refuse to give the county the benefit of such collection, upon the allegation that having failed to take such bond in an adequate amount, the whole sum, so collected, has been appropriated to other liabilities of said Kepner.

5. That the bond so taken by the Commonwealth, was for the payment, according to law, of all moneys received for the use of the Commonwealth; that the county of Schuylkill was entitled to the benefit of the security afforded by such bond, and in case the penalty and the amount named therein was inadequate to cover the full amount due by said Kepner, the county is entitled to the benefit of at least a rateable proportion thereof, as indemnity for the arrears of said Kepner upon the state taxes collected by him.

6. That as the county was not charged immediately after the second Tuesday in January 1857, with the *quota* for 1856, and was not charged in 1858 for the *quota* of 1857, so that the county might avail itself of the amounts unpaid for each year respectively upon the state tax duplicates, in the hands of collectors, or the amount collected by the county treasurer, in his hands and not paid over, under no construction of the Act of 1844 can the county be held liable for the amount, appearing as unpaid for those years at the periods aforesaid, upon a charge entered upon the books of the state treasurer, as late as the 26th November 1858.

These points the learned judge answered as follows:—

"1 and 2. It was the duty of the county commissioners to assess a tax on the real and personal property of the county of Schuylkill, equal to its proportion or *quota* as fixed by the board of revenue commissioners. It was also the duty of the county officers to have the same collected, and of the county treasurer to pay over the same to the state treasurer agreeably to law. The state also had the power through its officers to require sufficient security to be given by the county treasurer for the safe keeping and paying over of such money, but the assessment and collection of a sufficient tax by the county officers will not discharge the liability of the county, provided the county treasurer neglected to pay the same into the state treasury agreeably to law, but the county of Schuylkill can properly be charged on the books of the state treasurer, with the amounts so assessed and collected by the county treasurer, provided, the same does not exceed the *quota* of that county as fixed by the revenue commissioners, and after deducting

the expense of collecting, the unpaid balance must bear interest at the rate of five per cent. per annum till paid, and the county must look to the county treasurer for such interest. The county remains chargeable with the amount of tax so assessed and collected until the same is paid into the state treasury, and no neglect of duty or failure to exercise the power conferred on the state officers by law, will discharge the liability of the county. First and second points answered in the negative.

"3. If the bond given by the county treasurer was insufficient to secure the public money, the commissioners could, under the Act of 1841, require it to be increased; and either the county commissioners or state treasurer could have required new bonds, or additional security, if the treasurer or his bail had become insolvent, under the Act of 1855; but the neglect of that duty, or a failure to perform it, will not relieve the county, nor will the failure of the judges, originally, to take the bond in an adequate sum, have that effect. This point negatived.

"4. It was unquestionably the duty of the judges of the Court of Quarter Sessions of Schuylkill county, to take a bond from the treasurer of that county, with good and substanial security, in a sufficient sum to cover all the money that could come into his hands as treasurer, for the use of the Commonwealth, and had that duty been performed, and the county been obliged to pay any money on account of the delinquency of the treasurer, the bond would have accrued to its use. But as the bond was not taken in sufficient sum to cover the delinquency of the treasurer, and has all been collected from the sureties and paid into the state treasury, there is nothing left for the county to receive, and as the county treasurer collected money belonging to the Commonwealth, which is not covered by the county's liability, it was neither against conscience nor law to apply the money collected on the official bond to that debt, and Schuylkill county cannot have the benefit of such collection.

"5. We have already stated in the general charge that the person paying money has a right in the first place to appropriate the money paid to any one of several debts he owes. In the absence of appropriation by the debtor the creditor can apply it, at his option, to any debt then due. If neither appropriate it at the time, the law will apply it as is most for the interest of the debtor. If its application is indifferent to him, it will be appropriated as is most for the interest of the creditor; and in the present case, as it appears to have been indifferent to either Kepner or his bail, but highly important to the interest of the Commonwealth, the law will, in the absence of any evidence of an act by either party, appropriate the whole fund to that portion of the debt for which the state held no other security, and the county of Schuylkill can demand no apportionment of the fund.

" 6. Although it is made the duty of the state treasurer to charge the county with the arrears of its *quota* of tax remaining unpaid into the state treasury, on the second Tuesday in January of each year, yet we consider the 40th section of the Act of April 29th 1844, merely directory on that subject, and a failure on the part of the state treasurer to perform the duty at the time indicated, will not discharge the county from its liability under the act, but the same can be charged at an after time with like effect as if done on the day. Therefore, the charge could be lawfully made on the books of the department as late as the 26th of November 1858, and the county held for the arrears. The point is answered in the negative."

To this instruction the defendant excepted; and a verdict and judgment having been rendered for the Commonwealth for $14,313.60, the defendant removed the cause to this court, and here assigned the same for error.

*F. W. Hughes,* for the plaintiff in error.

*Knox, Attorney-General,* for the Commonwealth.

The opinion of the court was delivered by

STRONG, J.—Were we to hold, with the plaintiff in error, that the counties in this Commonwealth are not severally made liable for the *quota* of state tax assessed upon the property within them, we should do violence alike to the letter and the spirit of the Act of April 29th 1844. Every part of that act points to the county as the principal debtor. After having, in the earlier sections, made provision for ascertaining the subjects of taxation and their value, and established a rate, the legislature proceeded, in the 36th, to create a board of revenue commissioners to equalize the assessments and taxes for the use of the Commonwealth in the different counties. The duty of this board, as defined in that and the two next following sections, is to determine and adjust the *aggregate* value of property made taxable by law, in the city of Philadelphia, and in the several counties, adjusting those aggregates, so as to make the taxes bear as equally as possible upon all the property in the Commonwealth. They have nothing to do with the property of the individual tax-payer. To assist them in the discharge of their duties, the county commissioners of the several counties are required to furnish for their use " a statement, under oath, of the return made by the assessors of the value, in the aggregate, of all the property liable to state tax in the said counties respectively, distinguishing real from personal estate." The board is then to make a valuation of the property in each county, and make a record of it, one copy of which shall remain in the office of the auditor-general, " as the valuation of the said

property," that is, of the property in said county, until the next meeting of the board. The 39th section of the act requires the state treasurer to " transmit to the commissioners of each county a copy of the valuation of the property of said county, and to issue his precept requiring said county commissioners to assess and collect the state tax in their respective counties, as provided by law on the amount of the valuation so transmitted." The same section gives to the commissioners power to add a fraction to the assessor's valuation of each tax-payer, when the revenue commissioners increase the aggregate value of the assessable property in the county. All this looks to dealing by the state only with the total valuation of the property in any county. Then follows the 40th section, which requires the commissioners of the several counties to cause to be collected the taxes as aforesaid adjusted and assessed, and makes it the duty of the county treasurer to pay over the same, as fast as collected, to the state treasurer. It then enacts, that " if the *quota* of any county be not paid over before the second Tuesday in January of each year to the state treasurer, then, and in such case, the amount remaining unpaid, after deducting such commissions as are or shall be allowed by law for the collection of the same, shall be charged against said county on the books of the state treasurer, and shall bear an interest of five per cent. till paid, and no payment shall be made to or on behalf of said county, under the various acts relating to common schools, or any other acts, or for any other purpose, until the said balance be fully paid and satisfied." It would be difficult to find language more expressive of a legislative purpose to make the county liable for the tax, not merely for the five per cent. interest after default in payment, but for the whole amount. The provisoes to this section confirm this view of its meaning. The first provides that if the collectors of the county shall not have collected and paid into the county treasury the amount of state tax due by said county, then, and in that case, the deficiency shall be paid out of any money in the treasury of said county, or which shall be thereafter first collected and paid into the same, whether on the duplicate for state or county tax." Why direct it to be paid out of the proceeds of the county tax, if it was not made a county debt ? The next proviso gives to the county a means of reimbursement for any interest it may be compelled to pay, by giving to it recourse to the county treasurer. He is made responsible not to the state, but to the county, if the tax appears to have been collected. The forty-second section of the act declares that if any county shall pay into the state treasury its *quota* of tax levied on its said adjusted valuation, fifteen days prior to the first day of August in any year, such county shall be entitled to an abatement of five per cent. on the amount so paid ; and any state tax remaining unpaid by any individual or corporation, after said tax is due

and payable by said county to the Commonwealth, shall bear an interest of six per cent., and be a lien on the estate on which it is charged, till fully paid and satisfied.    Here, too, the primary liability is spoken of as belonging to the county, while the means of enabling it to discharge the duty imposed are at the same time given.

Nor is it any valid objection to this construction of the act, that the county treasurer is required by law to give bond for the faithful discharge of all duties enjoined upon him in behalf of the Commonwealth, and for the payment of all moneys received by him for the use of the Commonwealth.    This was required by the Act of 1834, ten years before the passage of the Act of 1844, which directed the state tax to be charged to the county, and besides he is still a county officer, in whose election or appointment the Commonwealth has no voice, and he may be removed from office or compelled to give additional security at the instance of the county commissioners.

The state tax upon the adjusted valuation being then legally chargeable to the county, the next inquiry is, whether the unpaid taxes of the years 1856 and 1857 could be charged to the county after the second Tuesday of January.    The fortieth section of the Act of 1844 makes it the duty of the state treasurer to charge on his books against the county the amount remaining unpaid, if the *quota* of the county be not paid over before the second Tuesday in January in each year, and it is thenceforth to bear interest until paid.    The act does not expressly declare when the charge on the state treasurer's books shall be made, though it is undoubtedly a reasonable implication, that it is to be made immediately after default of payment.    In this case it was not made until the 26th of November 1858, and thus the state treasurer failed to discharge his duty.    But the Commonwealth is not to suffer by the laches of its agent, nor can the County of Schuylkill obtain a discharge from its liability because the state treasurer was not vigilant: United States *v.* Kirkpatrick; 9 *Wheaton* 720; 3 *Mason* 446; 1 *Peters* 325; 1 *Harris* 617.    At most, the implied direction to charge the unpaid balance against the county immediately after the second Tuesday in January of each year, must be regarded as directory, and especially ought it to be so held, when it does not appear that the county lost anything by the state treasurer's delay, and when probably it has been a gainer thereby.

Nor can the fact that the bond of the county treasurer, approved by two of the judges of the Court of Quarter Sessions of Schuylkill county, was altogether insufficient in amount, either negative the liability of the county, or release it from its obligation.    The liability is fixed, as has been seen, by the Act of 1844, and enough has already been said, to show that the negligence of the agents of the state cannot prejudice her, even if the judges, in taking the

[The County of Schuylkill *v.* The Commonwealth.]

bond, acted as state agents.    There is the more reason for this in the fact that full power is given to the county commissioners to enforce the giving adequate security: Act of 27th May 1841, *P. L.* 401.

It remains only to add that, in our opinion, there was no error in the instruction given to the jury respecting the appropriation of the amount recovered by virtue of the county treasurer's bond. He had collected money belonging to the Commonwealth for which the county was not liable; more than the whole amount of his bond.    When that bond was paid, it made no difference to him upon which claim of the Commonwealth it was applied. Still he had a right to direct its application.    It was not contended, that he had given any direction.    It was, therefore, the right of the Commonwealth to apply it as she chose, either to the payment of the state tax, or to the other indebtedness of the treasurer.    The jury have found that she did not apply it to the state tax.    If no application was made, either by the treasurer or the officers of the Commonwealth, then the law applied it as was most advantageous for the state, that is, to the payment of the indebtedness for which the county was not liable.    This is clearly so, unless the county is to be regarded as a surety for the defaulting treasurer, and such she certainly is not.    She, therefore, had no equity to interpose in the way of either appropriation.    The question, however, hardly arises, because the uncontradicted evidence on the trial was, that an appropriation was in fact made, when the money was paid, and the verdict of the jury establishes that it was not in payment of the state tax.    Of course, it could not afterward be changed.

The judgment is affirmed.