## Lewis *v.* Wyalusing Light, Heat & Power Company.

*Taxation—Corporations—Lien of taxes—Corporate property sold under foreclosure—Filing certificate in prothonotary's office—Notice from auditor general—Acts of April 16, 1827, P. L. 471, June 15, 1911, P. L. 955, and June 21, 1911, P. L. 1098.*

Where a mortgage executed in 1894, covering the franchises, plant and fixtures of a corporation, is foreclosed in 1914, and the property sold, the Commonwealth has priority in distribution for taxes on capital stock, on bonds, and on gross receipts accruing for the years, 1911, 1912 and 1913, although the auditor general has not transmitted to the prothonotary of the county where the property was sold, certified copies of the tax liens for the years, as provided by the Act of April 16, 1827, P. L. 471. The Act of June 15, 1911, P. L. 955, is retroactive in character and supersedes the Act of April 16, 1827, P. L. 471, relating to the transmission of certified copies of liens, by providing that the auditor general shall upon the payment of a fee of twenty-five cents, give to any one interested a certificate showing the amount of all tax liens against any corporation.

The Act of 1911 in so far as it relates to certified copies of liens to the prothonotary being superseded by a certificate from the auditor general, merely substitutes one remedy for another, and does not impair any contract or disturb any vested right.

The Commonwealth does not lose its priority of lien for taxes in the distribution of the proceeds of the property of a corporation sold at judicial sale, because the auditor general did not give to the person in charge of the sale a certified copy of tax liens, as provided by the Act of June 21, 1911, P. L. 1098, if it appears that the auditor general had no notice of such sale from the party intending to hold it .

Argued Nov. 17, 1915. Appeal, No. 253, Oct. T., 1915, by the Commonwealth, from order of ·C. P. Bradford Co., March T., 1914, No. 642, dismissing exceptions to auditor's report in case of E. D. Lewis and H. J. Lloyd, Trustee, v. Wyalusing Light, Heat & Power Company. Before RICE, P. J., PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Exceptions to auditor's report.

From the record it appeared that a mortgage given by the Wyalusing Light, Heat & Power Company in 1904, covering its franchises, plant and fixtures, was foreclosed in 1914, and its property sold in the foreclosure proceedings. The money was paid into court for distribution and John W. Codding, Esq., was appointed auditor for that purpose. The Commonwealth presented as preferred claims the taxes on capital stock, on bonds, and on gross receipts, for the years 1910 to 1914, inclusive. This claim was disallowed by the auditor, and the report was confirmed by the court. The Commonwealth appealed. The facts of the case appear by the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*J. Roy Lilley,* with him *Wm. P. Wilson,* for appellant. —The Act of 1911 was retrospective: Haspel v. O'Brien, 218 Pa. 146.

*John C. Ingham,* for appellees.—The Act of June 15, 1911, is not retrospective: Barnesboro Boro. v. Speice, 40 Pa. Superior Ct. 609; Brubaker Est., 59 Pa. Superior Ct. 109; Com. v. Danville Bessemer Co., 207 Pa. 302; U. B. Congregation v. Emaus Borough, 56 Pa. Superior Ct. 136; Caner v. Bergner, 27 Pa. Superior Ct. 220; Martin v. Greenwood, 27 Pa. Superior Ct. 245; Oil City B. & L. Assn. v. Shanfelter, 29 Pa. Superior Ct. 251; Gibbons v. Cochran, 32 Pa. Superior Ct. 185.

OPINION BY TREXLER, J., March 1, 1916:

In 1894 the Wyalusing Light, Heat & Power Co., Inc., executed a mortgage on its franchises, plant and fixtures. This mortgage was foreclosed in 1914, the property sold, and the matter was referred to an auditor to distribute the proceeds. The Commonwealth of Pennsylvania presented claims for State taxes against the fund realized, claiming that such taxes should be paid prior to any other liens upon the property. The auditor and the court below held that the Commonwealth could not recover, holding that the law governing the case must be found in the acts of assembly which were in force at the time the mortgage was executed and not in those which had been passed subsequently. A brief reference must be made to the acts of assembly in order that the case may be properly presented. Under the Act of March 30, 1811, Section 12, Stewart's Purdon 3683, the accounts between the Commonwealth and others were a lien from the date of settlement of the real estate of the person indebted. The Act of April 16, 1827, P. L. 471, required the auditor general to transmit to the prothonotaries of the respective counties, certified copies of the liens which arose by virtue of the above Act of 1811. Under said act a failure to file such certified copies postponed the claim of the Commonwealth to those of other lien creditors: Re Wilson's App., 4 Pa. 164; Re Arnold's Est., 46 Pa. 277. The Act of June 7, 1879, P. L. 112, Section 14, provided that when any kind of corporate assets

were sold at judicial sale, the taxes due the Commonwealth should be first paid out of the proceeds. The filing of the certified copy required by the Act of 1827 was still necessary: Wm. Nilson & Son, Silversmith Co.'s Est., 150 Pa. 285. Section 31 of the Act of June 1, 1889, P. L. 437, substantially reenacted the Act of 1879 in this respect, and the notice was still required: Gladden v. Chapman, 188 Pa. 586. The above are the acts that were in force in 1894, the year in which the mortgage was given. The Act of June 15, 1911, P. L. 955, Section 1, reads as follows: "That from and after the passage of this act, all State taxes imposed under the authority of any law of this Commonwealth now existing, or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, company, association, joint-stock association or limited partnership, shall be a first lien upon the franchise and property, both real and personal......from the date when they are settled by the auditor general, and approved by the State treasurer; and whenever the franchise or property of a corporation, company, association, joint-stock association, or limited partnership shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale, before any judgment, mortgage, or any other claim or lien against such corporation, company, association, joint-stock association, or limited partnership." The section of the act provides: "that the auditor general may at any time transmit to the prothonotary of the respective counties of the Commonwealth, certified copies of all liens for State taxes unpaid, etc., upon which record scire facias may issue." Section four of the Act of April 16, 1827, above referred to, was expressly repealed by this act and the requirement of notice from the auditor general by certified copy of the liens to the prothonotary to be filed in his office was done away with.

The question to be answered is, does the Act of 1911 apply to the distribution of the proceeds of the mortgage which was made in 1894 and foreclosed in 1914? The lower court held that the act did not apply and cited a number of cases showing that unless such intention is clearly expressed a statute should not be given a retrospective effect. This is undoubtedly the law. But "retrospective laws may be supported when they impair no contract or disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, which do not vary existing obligations contrary to their situation when entered into and when prosecuted": Shonk v. Brown, 61 Pa. 320. The Act of 1911 made no change in the status of this mortgage. The priority of the lien for the State taxes when distribution was had of any corporation property after judicial sale, existed at the time the mortgage was given, and as to this the Act of 1911 changed the situation in nothing. It therefore violated the obligation of no contract and had absolutely no retrospective effect in this respect. The prior acts of the legislature giving priority to tax claims were not repealed by the Act of 1911, and even if they had been apparently repealed, the latter act being in this respect merely a reenactment of the former act, the effect would be that the prior act would remain unrepealed and the priority in this respect continued in operation in that all the rights and liabilities incurred thereunder would be preserved and might be enforced: Haspell v. O'Brien, 218 Pa. 146. As stated before, the Act of 1911 did away with the requirement of the Act of 1827 which compelled the Commonwealth to transmit a certified copy to the prothonotary of the county to be entered in his office and in lieu thereof it provided that the auditor general should, upon the payment of a fee of twenty-five cents, give to any one interested a certificate showing the amount of all tax liens against any corporation. In other words, the manner and place of getting infor-

mation as to State taxes was changed. This was a mere change of procedure and affected no rights. No one has any vested right in a particular remedy. If the records of a certain office are notice to every one as to matters therein appearing, the legislature may, in its wisdom, unless prevented by some constitutional restriction, at any time provide that thereafter such records shall be kept in some other office. Certainly no one would think that such an act changing the place where one must go for such information in regard to liens of a certain character deprived him of any right.

The argument advanced that the Act of 1911 created secret liens and was thus against public policy, deserves no extended notice. Information that may be obtained by application to the auditor general's office and which is certified by said office for a fee of twenty-five cents can hardly be characterized as secret.

The Act of June 21, 1911, P. L. 1098, imposes a duty upon the auditor general to give to the officer having charge of a sale of the property of a corporation a certified copy of all tax liens or other public accounts, settlements, on file in his department as a lien against such corporation and in case of no liens a certificate giving that fact, which certified copies shall be publicly read by said officer at or before the sale of the property of such corporation. This was not done in the case before us, but a sufficient answer to this is that the duty imposed upon the auditor general is put upon him after he receives notice from the party intending to hold the sale and that there being no proof that he had received such notice the Commonwealth was not in default and the above act has no application to the case before us.

In our view the following items of the Commonwealth's claim settled since the passage of the Act of 1911 must be allowed: Capital Stock Tax, 1911, 1912 and 1913, aggregating $176.50; tax on bonds for 1911, 1912 and 1913, aggregating $202.20; tax on gross receipts for 1911 and 1912, aggregating $61.15. As to the

other items of the Commonwealth's claim they did not become liens upon the corporate property and franchises prior to the sheriff's sale held in 1914, and it is admitted that they should be disallowed. We are of the same opinion as to the taxes settled and entered prior to the Act of 1911 of which no certificate was filed in the prothonotary's office.

The decree of the lower court is reversed and the record is remitted with direction that the claims of the Commonwealth be allowed as herein stated.