# Schoyer et al. *v.* Comet Oil & Refining Co.

*Constitutional law—Classification and uniformity of taxes—Collection of taxes by corporations and individuals—Priority of lien to commonwealth for moneys not paid over by corporations—Gasoline taxes—Public account—Acts of March 30, 1811, P. L. 145; June 30, 1885, P. L. 193; June 15, 1911, P. L. 955; May 20, 1921, P. L. 1021, and June 15, 1923, P. L. 834.*

1. A statutory classification is unreasonable and unjust which gives priority over all claims to a commonwealth lien for money collected by a corporation as a tax, which it fails to pay over, when there is no such lien where an individual collects the tax and retains it.

2. The provision of the Act of June 15, 1911, P. L. 955, which gives priority of lien for money collected by corporations under the gasoline tax imposed by the Acts of May 20, 1921, P. L. 1021, and June 15, 1923, P. L. 834, is unconstitutional, inasmuch as no such priority of lien is given where the tax has been collected by individuals and not paid over.

3. Where the gasoline taxes are paid into the hands of the collectors, corporate or individual, they cease to be a tax, and the amount due the Commonwealth becomes not only a debt but also

a public account within the meaning of the Act of March 30, 1811, P. L. 145.

4. The test of classification is whether it produces diversity in results or lack of uniformity in its operation either on the given subject of tax or the persons affected as payers. There must be a real distinction between the objects with which the law deals for it to be valid.

5. There is no reason for the different treatment of the holders of an indebtedness against a corporation and the holders of an indebtedness against individuals because of a tax collected based on the same subject; nor is there any reason for a distinction in the rules governing a corporation and an individual who has collected money and failed to pay it over.

6. The law respecting the persons who collect and the method and manner of collection should be of general application; if there must be different rules for persons or objects, they should be based on natural differences, and such diversity should not unnecessarily infringe the rights of others who may be affected thereby.

7. The Act of June 30, 1885, P. L. 193, relating to the state tax on corporate indebtedness has no application to moneys due the Commonwealth under the gasoline tax.

Argued May 11, 1925. Appeal, No. 58, March T., 1925, by the Commonwealth, from order of C. P. Allegheny Co., July T., 1924, No. 373, sustaining exceptions to sheriff's return of distribution of proceeds of sale of real estate, in case of Lucy O'H. Schoyer et al. v. Comet Oil & Refining Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to sheriff's return of distribution of proceeds of sale of real estate. Before DOUGLASS, J.

The opinion of the Supreme Court states the facts.

Exceptions sustained. The Commonwealth appealed.

*Error assigned* was order, quoting record.

*H. K. Siebeneck,* Special Deputy Attorney General, with him *George W. Woodruff,* Attorney General, and *John Robert Jones,* Deputy Attorney General, for ap-

pellant.—There was no unreasonable classification under the acts: Roup's Case, 81 Pa. 210; Kittanning Coal Co. v. Com., 79 Pa. 100; Com. v. R. R., 104 Pa. 89; Com. v. Canal Co., 123 Pa. 594; Com. v. R. R., 145 Pa. 57; Bell's Gap R. R. v. Com., 134 U. S. 232; Com. v. Megargee Bros., 275 Pa. 12; Callery's App., 272 Pa. 255; Nicol v. Ames, 173 U. S. 509.

The act authorizing the creation of a lien or providing for the method of collection of a debt, if the creditor or claimant in either case be the Commonwealth, is not the subject of a local law but of a general law: it is for the benefit of all the people of Pennsylvania, that is, the Commonwealth: Booth & Flinn v. Miller, 237 Pa. 297.

*E. H. Wicks,* with him *Alvin A. Morris,* of *Morris, Walker & Boyle,* for appellees.—The State does not have a lien on the property of a corporation for taxes collected by the corporation on the sale of gasoline and liquid fuels under the Acts of May 20, 1921, P. L. 1021, and June 15, 1923, P. L. 834, for the reason that the Act of June 15, 1911, P. L. 955, under which the lien is claimed does not apply to individuals: Sweeney v. Arrowsmith, 43 Pa. Superior Ct. 268; Com. v. Reitzel, 9 W. & S. 109; Hutchinson v. Com., 6 Pa. 124; Arnold's Est., 46 Pa. 277; Wilson & Son S. Co., 166 Pa. 296; Traction Materials Co. v. Ry., 261 Pa. 153; Com. v. Canal Co., 123 Pa. 594; Frost v. Cherry, 122 Pa. 417; Bolton v. Johns, 5 Pa. 145.

The Gasoline Tax Acts of May 20, 1921, P. L. 1021, and June 15, 1923, P. L. 834, if construed and applied with reference to the Act of June 15, 1911, P. L. 955, so as to give the Commonwealth a first lien upon the property of the Comet Oil and Refining Company, with priority over an antecedent purchase-money mortgage, would violate article III, section 7, of the Constitution of the State, which provides that the general assembly shall not pass any local or special law "authorizing the creation, extension or impairing of liens," or "providing or

changing methods for the collection of debts": Collins v. Com., 262 Pa. 572; Perkins v. Phila., 156 Pa. 554; Booth & Flinn v. Miller, 237 Pa. 297; Davis v. Clark, 106 Pa. 377; Waters v. Wolf, 162 Pa. 153; Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382; Vulcanite Paving Co. v. Transit Co., 220 Pa. 603.

OPINION BY MR. JUSTICE KEPHART, June 27, 1925:

Is a statutory classification reasonable and just which gives priority over all claims to a Commonwealth lien for money collected by a corporation as a tax from the sale of gasoline, when there is no such lien where an individual collects as vendor and retains the tax? Has such lien priority over a purchase-money mortgage given to an individual by the corporation in the sale of land?

The Comet Oil Refining Company, a corporation, acquired title to a piece of land in Pittsburgh, December 6, 1919, and gave a purchase-money mortgage as part payment to the grantor. In 1920 the company purchased two leasehold interests in that city. At these two latter locations it had a service station, selling gasoline and liquid fuel. Under the Acts of May 20, 1921, P. L. 1021, and June 15, 1923, P. L. 834, the State imposed a tax on the sale of gasoline, and on account of it there was due the Commonwealth the sum of approximately $6,000 from the collecting agent, the Comet Oil Refining Co. The proceeds of $11,000 from the sale of the mortgaged property was subjected by the sheriff to the payment of this sum received by the agent in payment of the tax. No gasoline was sold on the premises for which the mortgage was given. It is obvious, if the distribution is to be sustained, the payment to the Commonwealth will be out of the mortgagee's pocket. The mortgagee sold her property at a time when no gasoline tax was in existence, accepting for part of the purchase money the mortgage. The legislature created the tax subsequently, and the corporation failed to pay to the Commonwealth the tax it collected. The State, by vir-

tue of the lien, requires the mortgagee to not only replace funds held by a fiduciary, but also to pay the debt of the corporation and accept just that much less in payment of her land than the price for which it was conveyed.

The Gasoline and Liquid Fuel Tax Acts of May 20, 1921, P. L. 1021, and June 15, 1923, P. L. 834, impose a tax on gasoline and all liquid fuels sold (except for re-sale) and require the person, firm, association or cor-poration selling the gasoline to collect the tax and pay it into the State treasury.

Priority for the lien is claimed under the Act of June 15, 1911, P. L. 955, which provides "all state taxes......and all public accounts settled against any corporation........shall be a first lien upon the franchise and property, both real and personal, of such corpora-tion.....; and whenever the......property......shall be sold at a judicial sale, all taxes......and public ac-counts due the Commonwealth, shall first be allowed and paid."

The gasoline tax act provides for two classes of collectors, corporations, or other associations, and indi-viduals; and the State Tax Lien Act of 1911, supra, imposes priority of lien on corporate delinquency only in returning the money collected.

The theory on which priority of state or municipal tax liens (or public accounts) may be sustained is that the revenue is necessary for the protection or better-ment of the State. Our first thought must always be the preservation of the government by unhesitatingly en-forcing the lawful means necessary to successfully carry it forward; the means should always be available for its continued security, not hindered or prevented by lesser rights which may suffer because of such enforce-ment; the common good is superior to individual or private rights. It is therefore a natural equity, fairly entitled to first rank in the list of claims that may be had against any or all property. The protection which

individuals receive at the hands of the government is compensation for any so-called impingement of right. The Act of 1811 is regarded as the original lien law for state taxes and public accounts, but many other statutes were enacted prior to the Constitution of 1874, making lien provisions; so that, if the liens for taxes and accounts mentioned in the Act of 1911 could not be upheld under this theory, as opposed to the constitutional inhibition of article III, section 7, prior legislation will sustain the liens for taxes and public accounts to the exclusion of other liens: Haspel v. O'Brien, 218 Pa. 146. There is scarcely any phase of the taxing problem that has not been covered by legislation prior to the fundamental law; subsequent statutes merely reflect the old law; this applies as well to public accounts later discussed.

Section 12 of the tax and public account lien act of March 30, 1811, P. L. 145, makes the balance of every account settled a lien on all the real estate of the person indebted from the date of settlement. Section 1 requires all accounts (called public accounts in section 2) between the State and any person or corporation, revenue officer or other person entrusted with the receipt of public moneys, to be examined and adjusted. This act gave a lien for taxes settled by the auditor general against corporations. "We have......felt not the slightest hesitancy in pronouncing......taxes......within the" Act of 1811: Com. v. The Easton Bank, 10 Pa. 442, 446; Wm. Wilson & Son Silversmith Co.'s Est., 150 Pa. 285, 288. The lien for taxes or moneys collected (public accounts) exists only from the date of settlement and filing a certified copy (section 4, Act of April 16, 1827, P. L. 471), both as to principals (In re Wilson, 4 Pa. 164; In re Arnold's Est., 46 Pa. 277) and sureties (In re Arnold's Est., supra). The Act of 1911 repealed the above requirement of notice.

The Acts of 1811 and 1827 were followed by section 14 of the Act of June 7, 1879, P. L. 112, 119; it gave liens

for state taxes priority over mortgages on the property of corporations, the words being "shall first be allowed and paid out of the proceeds of such [judicial] sale."

There is no inconsistency between the Act of 1879, 1827 and 1811, with reference to the collection of money due the Commonwealth, or the lien for state taxes imposed on corporate property, except the special feature as to priority. When hostility arose over the priority of liens between the Commonwealth and other lien creditors, the former's claim was sustained when recorded. Section 12 of the Act of 1811, "is quite as efficacious in giving a lien to the Commonwealth as is" section 14 of the Act of 1879. Wm. Wilson & Son Silversmith Co.'s Est., supra, 289. The lien against individuals for public accounts has no priority under these acts, and does not precede existing liens.

There is no material change in the Acts of 1879, 1889 (P. L. 437) and 1911, supra, as affecting liens for state tax on the property of the corporation, reading the Act of 1827 into the first two acts of course, or the lien as to individuals contemplated under the Act of 1811.

We then have this situation: The Act of 1811 allows a lien against any person who retains public money, or his surety, including state taxes. The Act of 1811, with the Acts of 1879 and 1889, authorizes a first lien against a corporation for taxes with no change in the lien for public accounts. The Act of 1911 places public accounts of corporations on the same plane as state taxes. Individuals with their sureties were not subjected to any different lien for public accounts than existed by the Act of 1811.

The first effect of this decided change, brought to our attention, came with the gasoline tax. There, in carrying into a public account, the priority incident to nonpayment of the tax collected by a corporation was charged as being of more than doubtful propriety.

Was the failure to pay the money a public account within the Act of 1811, or merely an ordinary debt due

the Commonwealth, collectible as such, and within the constitutional inhibition of section 7 of article III? When these taxes are paid into the hands of the collectors, corporate or individual, they cease to be tax, and the amount due becomes not only a debt, but also a public account within the meaning of the Act of 1811. A public account as defined is very comprehensive. "Its operation has not been confined......to technical accounts, but has been extended to embrace every case where one retains public money which ought to be paid into the public coffers, no matter under what appellation received. Whether called tax, or dividends, or portions of fees of office, the sums received for, and retained from the public use, fall within the purview of the act": Com. v. The Easton Bank, 10 Pa. 442, 446; Wm. Wilson & Son Silversmith Co.'s Est., supra, 288; Com. v. Reitzel, 9 W. & S. 109; Hutchinson v. Com., 6 Pa. 124.

The gasoline tax was on a new subject of property, to be paid by consumers to corporations and individuals vending it. When the consumer paid a corporation vendor, the lien for corporate delinquency was superior to mortgages and other claims; where the consumer paid to an individual vendor, under the Act of 1811 a lien arose from the date of settlement, but not to the prejudice of prior lien creditors. If this is a proper classification in the method of collection as between corporation tax gatherers and individual tax gatherers, the revenue being from the same species of property, the lien must stand.

Is such requirement prejudicial to the holders of corporate lien indebtedness anterior in time, as compared with the immunity to the holders of like securities of individual tax gatherers of the same tax, or is the diversity so unreasonable as to constitute an unjust and illegal classification, or does such method of collection produce a lack of uniformity?

The test of classification is whether it produces diversity in results or lack of uniformity in its operation either on the given subject of tax or the persons affected as payers. There must be a real distinction between the objects with which the law deals for it to be valid. As stated in Gulf, Colorado & Santa Fe Railway Co. v. Ellis, 165 U. S. 150, 155, "Classification cannot be made arbitrarily......That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis......[p. 159]. Arbitrary selection can never be justified by calling it classification." And by this court in Com. v. Sharon Coal Co., Ltd., 164 Pa. 284, 305, "All properties, however, in the same class, must be taxed without discrimination in the rate of tax imposed; and the rule for ascertaining the value of the property must be the same." To have different rules for imposing a lien for the same character of public account on different collectors, is just as unequal and unfair as different rules for ascertaining value unless, as stated, there is in the persons collecting such difference in position in public life that makes diversity a necessity. The same right to classify exists as to the persons collecting (Bachman's App., 274 Pa. 420) and the method and manner of collection. The law respecting the latter should be of general application; if there must be different rules for persons or objects, they should be based on natural differences, and such diversity should not unnecessarily impinge the rights of others who may be affected thereby.

No reason is presented for the different treatment of the holders of an indebtedness against a corporation and the holders of an indebtedness against an individual because of a tax collected based on the same subject. Nor is there any reason given for a distinction in the rules governing a corporation and an individual who has collected money and failed to turn it over. There

are no unusual features attaching to the tax or the collector.

Section 1 of article IX requires all taxes to be uniform upon the same class of subjects, and shall be levied and collected under general laws. That the tax, qua tax, is a uniform one within the class cannot be doubted; nor may any question be raised concerning the right of the Commonwealth to classify properties and their owners for the purpose of taxation: Durach's App., 62 Pa. 491; Com. v. Delaware Div. Canal Co., 123 Pa. 594, 620; Seabolt v. Northumberland County Commissioners, 187 Pa. 318; Knisely v. Cotterel, 196 Pa. 614.

The Commonwealth earnestly contends that the Act of June 30, 1885, P. L. 193, relating to state tax on indebtedness is applicable, inasmuch as prior to the Act of June 17, 1913, P. L. 507, and supplements, the tax was imposed on the holders of the bonds and other evidences of indebtedness. Where the indebtedness was that of a corporation, it was the tax collector, though the tax was on the holder of the bond. Where an individual had money at interest in other securities than thus designated, the county treasurer was the collector. Under the Act of 1879, as well as subsequent acts, the corporation is required to pay the amount collected to the State or suffer a first lien on the corporate property: Lewis v. Power and Heat Co., 62 Pa. Superior Ct. 282. The property of the county official collecting was not subjected to this rule.

The classification was justified in Com. v. Delaware Div. Canal Co., 123 Pa. 594, not only with regard to the manner in which the value of the particular indebtedness was assessed, but also as to the different methods of collection. The reasons for the rule stated by the Justice who wrote the opinion may be found on pages 622 and 623, but do not exist here. The county officials who collected were persons in official life, required to give security for the faithful performance of their duties. Section 9 of the Act of May 13, 1856, P. L. 569,

makes the counties liable for the tax collected by the treasurer, and the county treasurer is the agent of the county, not the state (Com. v. Phila. Co., 157 Pa. 531, 543; Schuylkill Co. v. Com., 36 Pa. 524), and these sureties are liable: Act of April 15, 1834, P. L. 542; Com. v. Hershey, 200 Pa. 306. That no question was there brought to the attention of the courts under this act is quite obvious. The Commonwealth was amply protected through the treasurer, the county and the sureties. Here the individual tax gatherer has no county or surety to account to the State. While the money actually in the hands of the different collectors under the indebtedness tax and the gasoline tax may be said to stand on an equal footing, the county treasurer in this aspect is a somewhat different person from the thousand individuals who happen to operate a small garage, selling gasoline to passers-by. We said in Knisely v. Cotterel, 196 Pa. 614, 633, that in classifying the collectors under the mercantile tax act the constitutional provision against local laws did not prohibit the imposition of additional duties to itself on its city officers by virtue of their office. The State may appoint its own agent to collect its own tax, even if such agent may be for other purposes a municipal officer. But such an officer is in quite a different position from the vendor of gasoline. The necessity for classification was there manifest; here it is not.

The act protects the holders of certain indebtedness, while it causes those of another to be embarrassed or injured without reason, both arising from the same cause. We find no reasonable ground for this classification or for the lack of uniformity in collection. Not being reasonable under the law, any attempt to make it so must fail.

We therefore hold that the provision of the Act of 1911 which gives a priority of lien for the money collected under the gasoline tax under the two first-named acts of assembly is unconstitutional; we do not here

attempt to disturb the priority of other liens under the Act of 1911, or the law as formerly declared. This applies not only to the collection of corporate indebtedness, but the collection of other state taxes. These taxing laws and the liens provided therefor stand on a different footing.

The judgment of the court below is affirmed.