# Commonwealth, ex rel. The City of Reading *versus* The Commissioners of Berks County.

1. In the year 1800, the heirs of the proprietaries of Pennsylvania, had no title, which they could convey, to land in a town, originally reserved for a public commons; nor to land not so reserved, in the absence of evidence that the same was the private property of the proprietaries.

2. The Act of February 17th, 1852, after reciting that certain land in the city of Reading was reserved by the proprietaries in the original townplat for public commons, directed the county commissioners, who held title thereto by a deed from John and Richard Penn, dated November 9th, 1800, to convey the same to the city of Reading. Upon bill for mandamus to compel the execution of such conveyance : *Held*, that the commissioners must make a deed as directed by the Act. In view of the Act of Divestiture passed November 27th, 1779, and the Act of April 10th, 1781, and in the absence of evidence that said land was the private property of the Penns, they had no title which they could convey to the commissioners, who held, therefore, at the sufferance of the state, subject to the will of the legislature.

March 4th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN J., absent.

ERROR to the Court of Common Pleas of *Berks county*. Of January Term 1885, No. 340.

Petition by the Commonwealth *ex rel.* the city of Reading, for a writ of mandamus to compel the Commissioners of Berks county to convey a certain tract of land in said county, to the city of Reading.

The petition first recited the Act of February 17th, 1852, (P. L. 65) on which it was based, and which recited, that when the city of Reading was originally laid out by the proprietaries of Pennsylvania, the tract in question was reserved by them, as a free and public commons for the dwellers of said town; that on November 19th, 1800, the Commissioners of Berks county purchased said tract from John and Richard Penn, late proprietaries, for the purpose of appropriating it to the use of said city as a public commons; and that the same had ever since been used for said purpose, except a small part sold by the said commissioners under an Act of Assembly; the Act then directed the county Commissioners to make a deed forthwith, of the remaining part of the tract, to the mayor, aldermen and citizens of Reading.   After reciting said Act the petition further set out that the commissioners had refused to make a deed as required thereby, and prayed for a mandamus to compel them to execute the same.

The answer of the respondents set up, that the tract in question was conveyed to the Commissioners of Berks county

November 19th, 1800, by John and Richard Penn, in fee, for valuable consideration and free from any trust; that under said grant and up to the date of this petition the commissioners of said county held visible, notorious, distinct, hostile and continued possession of said land; that while the Act of 1852 was as recited in the petition, yet the city of Reading had never before taken any steps to enforce its claim; that the Act of 1852 was unconstitutional as impairing the obligation of contract. To this answer the petitioners demurred; and the court in an opinion by SASSAMAN, J. entered judgment for the respondents on the demurrer. Thereupon the petitioners took this writ of error, assigning for error said action of the court.

*Wayne Hayman* and *Richmond L. Jones* (with whom was *Geo. F. Baer*), for plaintiff in error.—County Commissioners can only hold land for the public use, that is, for the Commonwealth and under control of the legislature: Van Kirk *v.* Clark, 16 S. & R., 286; Dillon on Munic. Corp., § 562. Therefore, when the commissioners acquired deeds for the land in dispute, which had been already dedicated to public use as a square or commons, they simply acquired a quit claim from the Penns and quieted the title, not for the county of Berks nor for the city of Reading, but for the public, whose sovereign power is represented by the legislature; which, by the Act of 1852 directed the conveyance by the commissioners to the city of Reading. But even if the county of Berks had acquired a legal title to the land, the power of the Legislature to dispose of it is none the less clear. As between the municipality and the general public, the legislative power is supreme, and so it is in all cases where there are no private rights involved. If the municipal corporation holds the first title to the ground for public uses without restriction, the legislature may doubtless direct and regulate the purposes for which the public may use it: Dillon Mun. Cor., sec. 651; Van Ness *v.* Washington, 4 Pet., (U. S.) 232; Stormfeltz *v.* Manor Turnpike Co., 1 H., 555. Public streets, squares and commons, unless there be some special restriction when dedicated or acquired, are for the public use, and the use is none the less for the public at large, as distinguished from the municipality, because they are situate within the limits of the latter and because the legislature may have given the supervision and control of them to the local authorities: Dillon Mun. Cor., sec. 656; O'Connor *v.* Pittsburg, 6 H., 189; Phila. & Trenton R. R. Case, 6 Wh., 25. The legislature has undoubted power, in such a case as this, to change the trustee: Philadelphia *v.* Fox, 14 P. F. S., 169; Phila. *v.* Field, 8 P. F. S., 320; Baird *v.* Rice, 13 P. F. S., 489.

*Henry C. G. Reber* and *Frank R. Schell,* for defendants in error.—All the evidence shows that the land in question was bought for the county of Berks. The deed from the Penns is to the commissioners of the county and their successors in office for the use of the county of Berks. The county erected a jail on the ground, a court house and other county buildings are about to be built. In its opinion the court below says: "Before this petition was presented there was no evidence in the case that the city since its start as a borough in 1752, ever asserted any act of ownership or claim of legal right to this ground. Even now there is no evidence before us, except the assertion of dedication to public use for the city, in the recitation of the preamble to the Act 1852. There is no evidence of any kind whatever before us, that there is any proprietary dedication of this ground for any purpose whatever."

The case of Evans *v.* Erie county, 16 P. F. S., 222, is conclusive of this case. There the Commonwealth having granted by a legislative Act a tract of land to the city of Erie, subsequently passed an Act granting a portion of this land to the county of Erie for the purpose of erecting an almshouse. The Supreme Court held that it could not be done; that the Commonwealth having parted with her title by the first grant to the city of Erie, could not by any subsequent act transfer that title to another. And yet that is the very thing which is being attempted in this case. The county of Berks, for a valuable consideration, secures a grant of land for county purposes from the Penns, which was in legal effect the same as a grant from the Commonwealth. Fifty-two years after this deed has been delivered and recorded, during all of which time the county of Berks retained undisputed possession of this land, the legislature of Pennsylvania by a mere arbitrary Act undertakes to transfer this land to the city of Reading. The Act of 1852 upon which the plaintiff in error relies is unconstitutional, as impairing the obligation of a contract: Dartmouth College *v.* Woodward, 4 Wheaton, 518; Deichman's Appeal, 2 Wh., 396; Evans *v.* Montgomery, 4 W. & S., 218; Chadwick *v.* Moore, 8 W. & S., 49; Bunn *et al. v.* Gorgas, 5 Wr., 441; Reiser *v.* Saving Fund Association, 39 P. S. R., 137, 154, 160. The Commonwealth having sold to the county has no title left: Evans *v.* Erie Co., 16 P. F. S., 222; Miller *v.* Ripka, 9 American L. Reg., 561; Vankirk *v.* Clark, 16 S. & R., 286.

Mr. Justice GORDON delivered the opinion of the court, May 11th, 1885.

After a careful review of the able opinion of the learned judge of the court below, and consideration of the evidence

and pleadings of the case, we are obliged to dissent from his conclusion. Without entering at all into the constitutional question of the right of the Commonwealth to divest an inferior municipality, such as a city or county, of the property which it holds for its own use, we may venture to say without fear of contradiction that it may dispose of its own property to whom it will, and that it may also direct the manner of the execution of a public trust.

We may also say in the beginning that it is hardly worth our while to attempt to establish by argument or authority, that which every one admits; that is, that the Statute of Limitations affects not the Commonwealth, and that no length of private occupation can defeat the public right to the use of a highway, street or square. Our inquiry is thus limited to the single question: what is it that the commissioners of Berks county oppose to the legislative mandate contained in the Act of the 17th of February, 1852, and why should they not convey as directed by that statute to the mayor, aldermen and citizens of Reading? The petition for the mandamus, following the language of the Act cited, sets forth that the land directed by the legislature to be conveyed as aforesaid, was reserved in the original town plat as laid out by the proprietaries of the province of Pennsylvania as a free and public commons. This important allegation, found both in the petition and statute, is not denied in the answer, but the deed of John and Richard Penn, dated November 19th, 1800, to the said commissioners, is alone relied upon to defeat the purposes of the Act. If however the fact is, as we must take the pleadings to admit, that the land in controversy had previously been appropriated to the public use; that it was embraced in the original town plan as commons devoted to the common use of the citizens of Reading, the deed of the Penns was worthless, for the reason that they had no title in the premises which they could convey to the commissioners: Commonwealth v. Alburger, 1 Whart., 469.

Again, and admitting that the land was not dedicated by the proprietaries to the use of the people as a public park or common, to whom, then, at the date of this deed, did the land in controversy belong? The Act of Divestiture (27th November, 1779), put an end to all rights of the proprietaries in the public domain, and limited those rights to their private estates and proprietary manors, and the Act of April 10th, 1781, seems to have been framed for the express purpose of putting an end to just such claims as that which the defendants now set up to defeat the provisions of the Act of 1852. " Sec. 11. And whereas, divers persons pretending title or leases or permission from the late proprietaries, or without

any pretence whatsoever, have taken into possession divers lots appurtenant to the city, and to the other towns within this state, which lots were held by the said proprietaries as such, and not in their private and several rights and capacities ; and whereas, such possession is not only injurious to the other citizens who are entitled to the use of such lands as common for their cattle, but will embarrass the future sale and appropriation of said lots for the general benefit of the state. For remedy whereof : 12. Be it enacted, that the care and custody of the city lots shall be and is hereby vested in the wardens of the city, and the care and custody of the lots appurtenant to the town of Reading shall be and is hereby vested in Samuel Mifflin, Henry Christ and Henry Haller.'' Now, not only is there no evidence that these Reading lots formed part of the private property of the proprietaries, but we have in the Act cited the express declaration to the contrary, and the claim put forth that they were part of the public domain. It seems to us, therefore, very clear, that however the case may be viewed, the Penns had no right which they could convey, and that at the date of their deed the power to dispose of this property was then, and still is, in the Commonwealth. It follows, that the commissioners of Berks county hold what yet remains of this property at the sufferance of the state, and subject to the will of the legislature thereof.

The judgment of the court below is now reversed, and it is ordered and adjudged that judgment be entered on the demurrer for the Commonwealth, and that the defendants be, and are hereby, peremptorily commanded to execute, as soon as conveniently may be, to the mayor, aldermen and citizens of Reading, a deed for all that certain tract or parcel of land of 49 acres and 134 perches, situate in the city of Reading, and more particularly described in the petition for the writ of mandamus and the Act of the General Assembly, approved February 17th, 1852, and that they, the said defendants, forthwith pay the costs of this suit.