Traction Materials Co. v. Pittsburgh, McKeesport & Westmoreland Railway Co. (No. 1).

*Receivers—Bad faith—Improper payments — Surcharge — Services—Compensation—Exceptions to account—Burden of proof—Continuation of business—Expenses—Preferred claims—Liens.*

1. Funds allowed the receiver of an insolvent corporation for necessary improvements and current expenses cannot be diverted by him to the payment of certain unsecured creditors of the corporation, thus giving them an unlawful preference, whether it be done directly or indirectly. Knowingly or negligently paying a fictitious value for property will result in a surcharge of the receiver; and such charge is not relieved because the excess is ap-

plied to a preëxisting indebtedness which the receiver had no authority to pay.

2. Where a receiver of a street railway company paid $15,000 ostensibly for two car bodies which were turned over to the road by the bondholders' committee who had previously been in charge thereof, and it appeared that the car bodies were not worth the price paid therefor, and the payment was in reality made not only for the car bodies, but also to cover a balance due the committee for money expended on the road, the court properly surcharged the receiver with the difference between the value of the car bodies and the amount paid for them.

3. Where a receiver paid a State tax which had been assessed against the corporation prior to his appointment and prior to the Act of June 15, 1911, P. L. 955, dispensing with the necessity of filing a lien for taxes against the property of a corporation in order to create a lien therefor, and it appeared that the assessment of taxes had not been filed of record, the court properly surcharged the receiver with the amount of such payment where the funds were not sufficient to pay unsecured creditors in full.

4. Where it appeared that, prior to the receiver's appointment, a contract had been made with another traction company for the extension to its lines of defendant's road, but before the extension was made defendant went into the hands of a receiver, and thereafter the written agreement expired and the receiver obtained leave of court and made the extension, which was of some value to the company, and which passed to the purchaser of the road at the receiver's sale, the court properly refused to surcharge the receiver with the amount expended for making such connection.

5. Where specified exceptions are filed to certain credits claimed in the account of a receiver or other trustee, the burden is cast upon him of supporting the same by proof and where he fails to do so the exceptions will be sustained.

6. Where a receiver issued certain receiver's certificates of the face value of $30,000 which he was authorized by the court to sell at not less than 90 per cent. of the par value, and employed an agent who sold such certificates at 94 per cent. and kept 4 per cent. as a commission and turned the balance over to the receiver, the court properly refused to surcharge the receiver with the amount of such commission, where it appeared that the receiver acted in good faith and without knowledge of what his agent received for the certificates.

7. Where a receivership extends over a term of years, a single act of misfeasance, by which the receiver profits nothing, will not necessarily deprive the receiver of all compensation. The allowance to a receiver for services is largely a matter for the court,

whose officer he is, to determine and with which an appellate court will only interfere to correct an abuse of discretion and such a finding will not be reversed by an appellate court unless error clearly appears.

8. Where it appeared that the receivership lasted four years and the auditor allowed the receiver $5,000 for his services which was increased by the court to $8,000, the contention that the receiver should not be allowed any compensation because of his connivance with the bondholders' committee in paying more than the fair value of the car bodies was without merit on appeal, especially where it appeared that the receiver had made no profit personally and where there was nothing else to show that the lower court had abused its discretion in fixing the receiver's compensation.

9. The general rule is that the court, which appoints a receiver for a public service corporation, may allow for operating expenses and necessary improvements out of the corpus of the estate and as preferred claims, even against mortgage lien creditors, although this power is to be exercised sparingly and with great caution.

10. Where a court directed its receiver to continue a trolley road as a going concern, and the receivership lasted four years and the road was subsequently sold at receiver's sale divested of liens, expenses incurred in connection with the running thereof, in addition to the receiver's certificates issued under the direction of the court, were properly allowed as a preferred claim against the fund.

11. Where a receiver kept honest, although not expert, accounts, and his surcharge exceeded his commissions, the lower court properly decided that the costs should be paid out of the fund.

Argued Feb. 5, 1918.   Appeals, Nos. 156, 157 and 158, Oct. T., 1917, by Union Trust Company of New Jersey, Farmers and Merchants Bank of West Newton, Pa., and James G. Hasking, Trustee, and Union Trust Company of Pittsburgh, Trustee, respectively, from decree of C. P. Allegheny Co., Jan. T., 1912, No. 447, dismissing exceptions to report of auditor, in case of Traction Materials Company v. Pittsburgh, McKeesport & Westmoreland Railway Company.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Bill in equity for the appointment of a receiver. Exceptions to report of auditor.   Before DAVIS, J. The opinion of the Supreme Court states the facts.

The court sustained certain exceptions and dismissed others, as appears by the opinion of the Supreme Court. Union Trust Company of New Jersey, Farmers and Merchants Bank of West Newton, Pa., and James G. Hasking, Trustee, and Union Trust Company of Pittsburgh, Trustee, appealed.

*Error assigned,* inter alia, was the decree of the court.

*M. W. Acheson, Jr.,* of *Sterrett & Acheson,* for appellants.—The $3,949 expenditure for the track connection was a piece of gross negligence, and the surcharge therefor by the auditor should not have been discharged by the learned court below: Shaw v. Railroad Co., 100 U. S. 605; Credit Co. of London v. Arkansas Cent. R. Co. et al., 15 Fed. 46; Schwartz v. The Keystone Oil Co., 153 Pa. 283.

Throughout the receivership, which lasted nearly four years, the receiver knowingly operated the railroad at a loss: Union Trust Co. v. Curtis, 105 N. E. 562; Gutterson & Gould v. Lebanon Iron & Steel Co., 151 Fed. 72.

The action of the receiver in connivance with the bondholders committee in paying $15,000 for cars he knew were worth no more than $7,950 was fraudulent.

The receiver failed to account for the commission at which his agent marketed the $33,000 of first lien certificates, and, for this sum, should have been surcharged.

The receiver was generally incompetent and forfeited all claim to compensation, under the facts found by the auditor and the court, especially because of his bad faith in paying for the cars: Stehman's App., 5 Pa. 413; Pangburn v. American Vault, Etc., Co., 205 Pa. 93; Reeves, Parvin & Co.'s App., 3 Walker 199; Speiser v. Merchants Exchange Bank, 110 Wis. 506; Elmer v. Loper, 25 N. J. Equity 475; Welsh v. Brown, 50 N. J. Eq. Rep. 387; Dalliba v. Winschell, 114 Am. St. Rep. 267.

The receiver should have been charged with a large part of the expenses of the protracted audit which his

mismanagement necessitated: Reeves, Parvin & Co.'s App., 3 Walker 199; Tenth National Bank v. Smith Construction Co., 242 Pa. 269.

*W. Clyde Grubbs,* with him *W. B. Secrist,* for appellee. —It was not the receiver's fault that the road was oper-ated at a loss.

. The receiver was not guilty of bad faith in paying for the cars.

The commission on the sale of the certificates was properly earned by the receiver's agent.

The compensation allowed the receiver was exceedingly moderate.

OPINION BY MR. JUSTICE WALLING, April 22, 1918:

These three appeals raise the same questions and will be considered together.   They are from the decree of the court below disposing of exceptions to the auditor's report and making distribution of the balance in the hands of the receiver.   In November, 1911, the appellee, James B. Secrist, was appointed receiver of the Pittsburgh, Mc-Keesport & Westmoreland Railway Company, which owned and operated an electric street railway, about nine miles long and extending from McKeesport, Allegheny County, to Irwin, Westmoreland County.   The appointment was made in above case on a creditor's bill alleging the defendant's insolvency.   The company was a financial failure and had outstanding first mortgage bonds to the par value of $442,000, on which no interest had been paid since 1905.   About three months prior to the appointment of the receiver, a bondholders' committee had been organized to whom was transferred $424,000 par value of said bonds.   The committee practically had charge of the road during those three months, and among other things secured a loan of $15,000 from the Columbia Knickerbocker Trust Company of New York, for which it pledged bonds of the company as collateral.   Some of this money was used to pay for two new car bodies, which

the company had ordered but could not obtain for lack of funds, and the balance was expended for other necessities of the road. The committee had turned the car bodies over to the company on a lease at the price of $7,900. Soon after his appointment, the receiver applied to court for an order authorizing him to issue receiver's certificates to the amount of $20,500 for the purpose, inter alia, of paying $15,000 for the two car bodies. The order was made and certificates to the last named amount were turned over to the committee, ostensibly to pay for the car bodies, but, as it appears, in reality to pay not only for the car bodies, but also for the balance which the committee had expended for the road. While the receiver made the payment in this way under the advice of counsel, he knew the car bodies were not worth the $15,000. The auditor characterizes this transaction as an exhibition of gross carelessness and bad faith on part of the receiver and a legal fraud, and surcharges him with the difference between the $15,000 and the real value of the car bodies as stated in the lease. This was approved by the court below. The receiver gained nothing personally by the transaction and possibly intended no wrong; but, in the most favorable aspect of the case, he used the balance of the $15,000 to pay a preëxisting indebtedness of the company to the committee, which he could not lawfully do; so the surcharge was right. Funds allowed the receiver of an insolvent corporation for necessary improvements and current expenses cannot be diverted by him to the payment of certain unsecured creditors of the corporation, thus giving them an unlawful preference, whether it be done directly or indirectly. Knowingly or negligently paying a fictitious value for property would result in a surcharge of the receiver, and he is not relieved because the excess is applied to a preëxisting indebtedness which he had no authority to pay.

The receiver paid a State tax of $961.74, which had been assessed against the corporation prior to his appoint-

ment, but had not been filed of record so as to become a lien, this being prior to the Act of June 15, 1911, P. L. 955, dispensing with such filing. The court below properly sustained the auditor in surcharging the receiver with the amount of that payment; for under such circumstances the claim of the Commonwealth was postponed to that of lien creditors: Wm. Wilson, Etc., Co.'s Est., 150 Pa. 285; Goodwin Gas Stove & Meter Co.'s Est., 166 Pa. 296.

The Pittsburgh Railways Company had tracks on Fifth avenue, McKeesport, while the road of the defendant company ended at a suburb about one-half mile therefrom. It was deemed desirable to extend the road so as to form a connection with the railway in the avenue and thereby run cars to the center of the city. For that purpose the defendant company in 1910 made an agreement with the railways company for such connection, and the city also gave municipal consent conditioned on bonds being given to complete the connection and protect the city from damages in the operation of the road. Before the extension was made the company went into the hands of the receiver, who obtained leave of court for that purpose and proceeded with the project, expending thereon $3,948.50. However, he was unable to furnish the stipulated bonds and never used the connection. The above mentioned agreement for the connection had expired before it was actually constructed and at that time the receiver had only a verbal arrangement relating thereto with the railways company; but that seemed satisfactory to the latter as it did the work of making the connection for the receiver, but insisted upon an indemnifying bond. The auditor surcharged the receiver with that expense, but we agree with the court below who allowed it. Greater prudence might have suggested securing the bonds before doing the work; but the receiver was acting in good faith, under the advice of counsel and as authorized by the court, and making a long contemplated and seemingly necessary improvement, of some

value to the company as the court below finds, and which passed to the purchaser of the road. Under such circumstances he should not be held personally liable.

The receiver was authorized to and did issue additional certificates to the face value of $30,000, which he was authorized to sell at not less than 90% of the par value, and he accounts for them at that amount. One Manning Stires had been connected with the company in various capacities, and also represented the bondholders'. committee, and later was in some matters associated with the receiver who intrusted him with the sale of the $30,000 issue of certificates. Mr. Stires sold them at 94%, of which he kept 4% and turned over the balance to the receiver, who is found to have acted in good faith in the matter and without knowledge of what Stires received for the certificates. We see no reason to differ from the auditor and court below, who held the receiver blameless in that transaction. Where specific exceptions are filed to certain credits claimed in the account of a receiver or other trustee the burden is cast upon him of supporting the same by proof and where he fails to do so the exceptions will be sustained.

The receivership lasted four years and the auditor allowed the receiver $5,000 for his services, which the court increased to $8,000. The appellants as bondholders and creditors strenuously urge that the receiver should not be allowed any compensation, largely on account of the transaction relating to the car bodies. As the presidents of two of the appellant banks were members of the bondholders' committee to whom the excess was paid, their objection does not appeal strongly to our sense of fairness. Aside from that, while the finding of bad faith was warranted yet it was more a matter of bad faith in law than in fact, for which the payment of $7,180.53 by the receiver out of his own pocket is a sufficient penalty. Where a receivership extends over a term of years, a single act of misfeasance, by which he profits nothing, will not necessarily deprive the receiver of all compensation.

The allowance to a receiver for services is largely a matter for the court whose officer he is, and with which an appellate court will only interfere to correct an abuse of discretion: Hilliard v. Sterlingworth Railway Supply Co., 236 Pa. 82, 88; Covington v. Hawes-LaAnna Co., 245 Pa. 73, 79; Schwartz v. Keystone Oil Co., 153 Pa. 283, 286. Such a finding will not be reversed by an appellate court except on clear proof of error: York Trust Co. v. Pullman Mfg. Co., 237 Pa. 261. It is also urged that he unnecessarily prolonged the receivership. That criticism is not without force, yet appellants took no steps to hasten its termination. There is nothing in the compensation allowed the receiver, or in the $5,000 allowed for counsel fees, that calls for our interference: see McDowell's App., 4 Pennypacker 384.

The court directed the receiver to continue the road as a going concern. This was in the interest of all parties, as it saved the franchise, tended to conserve the property and promoted public convenience. By some arrangement the road was sold in 1915 at receiver's sale divested of liens. Its operation had resulted in a loss, and certain expense connected therewith in addition to the certificates was allowed as a preferred claim. The general rule undoubtedly is that the court, who appoints a receiver for a public service corporation, may allow for operating expenses and necessary improvements out of the corpus of the estate and as preferred claims, even against mortgage lien creditors: 34 Cyc. 353; Kneeland v. American Loan & Trust Co., 136 U. S. 89; Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434. To the same effect is a per curiam decision of Judge SHARSWOOD, at nisi prius, in Patterson v. Hempfield R. R. Co. (Pa.), 1 W. N. C. 127. This is a power, however, to be exercised sparingly and with great caution. We cannot say that the giving of such preference in this case was error.

The receiver kept honest but not expert accounts, and, as the case was decided by the court below, his surcharge exceeds his commissions; so we see no ground for dis-

turbing the finding that the costs should be paid out of the fund for distribution.

The assignments of error are overruled, and the decree is affirmed at the costs of the appellants.