*Decedent's estate—Life estate—Collateral inheritance tax.*

Where a testator bequeathed a money legacy subject to two life estates, with the remainder to the children of a sister who survived him the collateral inheritance tax was not payable until the termination of the estates for life.

Under the provisions of the Act of May 6, 1887, P. L. 79, such tax is not payable, nor does interest begin to run, until the person or persons liable for the same shall come into actual possession of such estate, by the termination of the estates for life. In such case, where the second life tenant did not die until 1924, no presumption of payment arises against the Commonwealth, because the remaindermen failed to make a return and to enter security for the payment of the tax within one year after the death of testator.

Argued December 9, 1926. Appeal No. 246, October T., 1926, by David L. Low, Elizabeth Low Pleasants and Anna Sargent Low, from judgment of O. C. Montgomery County, October T., 1925, No. 42, dismissing appeal from an assessment of collateral inheritance tax in the estate of Gorham Parsons Sargent, deceased. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Exceptions to assessment of collateral inheritance tax. Before SOLLY, P. J.

The facts are stated in the opinion of the Superior Court.

The Court dismissed the exceptions. Exceptants appealed.

*Error assigned,* among others, was the decree of the Court.

*Henry Pleasants,* and with him *Howard Spencer Okie,* for appellant.—A legal presumption of payment arises after twenty years. When the Commonwealth comes into Court, it is subject like other suitors to the established rules of evidence: Reed vs. Reed, 46 Pa. 241; Ash's Estate, 202 Pa. 424; Mellon's Appeal, 114 Pa. 564; Stewart's Estate, 147 Pa. 383; Peter's Appeal, 106 Pa. 340; Fassig's Estate, 20 Dist. 77.

*Samuel H. High,* and with him *John M. Dettra* and *Aaron S. Swartz, Jr.,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1926:

This is an appeal from a decree of the Orphans Court of Montgomery County, by which that court dismissed an appeal to it from the assessment of the collateral inheritance tax upon certain estates in remainder. The estate in question is that of Dr. Gorham Parsons Sargent and the material facts appearing from the record are these: The decedent died January 11, 1891, leaving a will dated October 23, 1890, by which he, inter alia, bequeathed the sum of $10,000 to his executor upon the following trust: "To be judiciously invested in mortgages, the income thereof to be paid semi-annually to my aunt, Mary Sargent, as long as she lives; and I direct that the said sum of $10,000 shall, after the death of my aunt, the said Mary Sargent, be paid to my beloved wife, Caroline Bailey Sargent, for her sole use and benefit during her lifetime, and after her death to be divided equally among the children of my sister, Mrs. M. A. Low."

On July 22, 1893, the life tenants executed an appropriate conveyance to the Commonwealth Title Insurance and Trust Company of Philadelphia, turning over

the said legacy to it to carry out the purposes of the trust. Mrs. Low, the sister of the testator referred to in the will, was a widow seventy-five years of age at the time of his death, and died in 1894. She had five children at the date of death of the testator, two of whom are still living and are appellants in this appeal, together with the daughter of another remainderman, now deceased. These children were: (1) David L. Low; (2) Anna Sargent Low; (3) Lucy Crain, who died in 1892, leaving to survive her a daughter, Elizabeth Low Pleasants, the third appellant; (4) Winthrop S. Low, who also died in 1892, leaving to survive him his widow, Caroline R. Low, and a son, Moses A. Low; and (5) Elizabeth Smith, who died in 1901, leaving to survive her her husband, Waldo B. Smith, and one child, James H. A. Smith.

The first life tenant, Mary Sargent, died July 30, 1898; and the second life tenant, testator's widow, Caroline Bailey Sargent, died September 1, 1924, at which time the right of possession accrued to the then owners of the estates in remainder. Within the year after the death of the testator, the appraiser, then appointed to appraise this legacy for collateral inheritance tax purposes, filed his report, in which he valued the life estate of the first life tenant, Mary Sargent, at two thousand dollars, and assessed the collateral inheritance tax thereon at one hundred dollars; and also valued the "present worth" of the estate of the remaindermen at five thousand dollars, and assessed the tax thereon at two hundred and fifty dollars. The collateral inheritance tax law in force at the time of the death of this decedent was the Act of May 6, 1887, P. L. 79, and the questions involved in this appeal must be determined under that act. The applicable provisions read: "Section 3. In all cases where there has been......a........bequest to collateral relatives........to take effect in possession, or

come into actual enjoyment, after the expiration of one or more life estates, ......the tax on such estate shall not be payable, nor interest begin to run thereon, until the person or persons liable for the same shall come into actual possession of such estate, by the termination of the estates for life........and the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner as aforesaid: Provided, that the owner shall have the right to pay the tax at any time prior to his coming into possession, and, in such cases, the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate........ And Provided further, that......the owner of any personal estate shall make a full return of the same to the register of wills of the proper county within one year from the death of the decedent, and within that time enter into security for the payment of the tax to the satisfaction of such register; and in case of failure so to do, the tax shall be immediately payable and collectible."

It is admitted on behalf of appellants that no security has ever been given for the payment of the tax on the estates in remainder and that neither of the surviving children of Mrs. Low ever paid any part of the tax assessed in the early part of 1892. Moreover, an examination of the proper records in the office of the Register of Wills of Montgomery County and in the Auditor General's office disclosed that there was no entry therein showing any payment on account of the tax. Accordingly, in 1925, shortly after the death of the second life tenant, the register appointed an appraiser to value the estates in remainder and assess the tax thereon, who assessed the amount thereof against the remaindermen on the full value of the legacy at five hundred dollars. From this appraisement an appeal was taken to the Orphans

Court. Under the facts as stated the learned President Judge of the court below held in substance that, as this legacy was a bequest of money as distinguished from a gift of a bond, jewelry or similar chattel, the remaindermen, under all the circumstances, were not required to enter security under the terms of the above quoted second proviso to the third section of the said act of 1887, supra; that the remaindermen "by their own admission are not in position to assert that, because they gave no security, the tax therefore became immediately payable and collectible and the presumption is that the tax was paid and collected after a lapse of thirty-three years"; and that, if any presumption of payment arose, it had been overcome by competent proof, namely, the admissions in behalf of the appellants and the official records.

The assignments of error challenge the correctness of these conclusions. The able and experienced counsel for appellants, who argued this case so clearly and forcefully, contends in his brief that "no excuse, warrant or reason exists for the failure to make the return and enter security to the satisfaction of the register........in order to secure immunity from immediate payment—save that they [the remaindermen] did not choose to do so and preferred the alternative, which was entirely within their rights"; that the immunity was therefore automatically lost in 1892, with the result that the tax then became "immediately payable and collectible"; that by reason of the lapse of more than thirty-three years since that time a presumption of payment had arisen; and that, as the failure to require security is attributable to the register rather than to the remaindermen, they are not precluded from setting up this defense against the present claim. If this tax became "payable and collectible" in 1892—a presumption of payment has arisen against the commonwealth which places upon it the burden of rebutting that

presumption by the best obtainable evidence. In Ash's Estate, 202 Pa. 422, it is held that, although a statute of limitation cannot be pleaded against the commonwealth, the presumption of payment from the lapse of time, being simply a rule of evidence affecting the burden of proof, applies to it. But we are not persuaded that the tax became "immediately payable and collectible" in 1892. In Coxe's Estate, 193 Pa. 100, 105, it is pointed out that under the third section of the act of 1887, supra, "It is perfectly clear that those persons who do not take their estates until after the determination of a preceding life estate are not subject to any liability for the tax until they come into actual possession of their estates," and that the tax is to be assessed under the statute "upon the value of the estate at the time the right of possession accrues to the owner."

With respect to the second proviso it is stated that it is in contravention of the provision contained in the enacting part of the third section and can only have application to the ordinary case of a devise or bequest to a person who is named and can be positively identified as "owner" immediately after the death of the testator, but, where it is impossible for the "owner" who will ultimately take the estate to be known, the proviso becomes incapable of application and the consequence that "the tax shall be immediately payable and collectible" does not result, and, further, that this consequence is merely "an imposed penalty for the nonperformance of the duty prescribed by the proviso." It is therefore "indispensable to know who is the person that is to perform the duty, the violation of which is punished by making the tax immediately payable." With respect to the legacy now under consideration the court below held that "At the death of Sargent the remainder interests in the legacy vested in the children of Mrs. Low, liable, perhaps, to open

and let in after born children.'' It is not essential to
the disposition of this appeal to consider in detail
whether the remainder here has all the technical attri-
butes of a vested remainder; it is clear, under Moss's
Estate, 80 Pa. Superior Ct. 323, in which our Brother
KELLER has comprehensively considered the question
of vested and contingent remainders with relation to
liability to collateral inheritance tax, that it is a
"transmissible, descendible and devisable" remainder,
and (List v. Rodney, 83 Pa. 483) that the possibility
of additional children being born to Mrs. Low, after
the death of the testator, notwithstanding her ad-
vanced age, existed in law. This is not a case like
Gelm's Estate, 61 Pa. Superior Ct. 228, in which the
testator gave his estate to his wife for life and after
her death to his four children, naming them, thereby
giving to each child an unquestionable vested estate
for all purposes and by all standards. It more nearly
resembles Montgomery's Estate, 63 Pa. Superior Ct.
318, where the testator gave a life estate in his per-
sonal property to his brother, followed by a life estate
to his niece, with remainder to her children, if any
survived her, and, if none, then a remainder to the
male relatives of his father, etc. A collateral inherit-
ance tax was assessed upon the entire personal estate.
We there held that, because it could not be ascertained
who would ultimately take the estate, whether the
children of the niece or the male relatives of the
testator, it was illegal to assess the tax on the entire
estate; that the life estate only was then taxable and
that the appraisement of the remainder must be post-
poned until it was ascertained who the remaindermen
would be. The rule there followed is that laid down
in Coxe's Estate, supra. Both life tenants survived
the testator and Mrs. Low, whose children were to
take in remainder, also survived him and at that time
had five children. Considering the situation as it

existed one year after his death, it may be said that the time when the right of possession would accrue to the remaindermen was of course absolutely uncertain and whether the children of Mrs. Low then living would be living at that time was equally uncertain. They might all be then living or some might be dead and some living. In the language of Coxe's Estate: of those who might then be dead, some might have appointed by will the persons who should take their shares of the estate; others might die intestate, and then only the right heirs of such under the intestate laws of Pennsylvania would be entitled to take. Who those persons might be it was beyond the wildest conjecture to determine. In fact, testator's widow, the surviving life tenant, did not die until September 1, 1924. By that time three of the children of Mrs. Low had died, whether testate or intestate, respectively, we are not informed by the record. Aside from the legal possibility of after born children, it was impossible to ascertain in 1892 the "owners" of the estate in remainder required to make the return and enter into security under said proviso and it therefore became inapplicable. As the tax did not become payable under the provisions of section three of the act of 1887, exclusive of the proviso, until the "termination of the estates for life" in 1924, no presumption of payment could arise.

The assignments of error are overruled and the decree affirmed at the cost of appellants.