## Commonwealth, Appellant, *v.* Central Realty Company et al.

Argued May 15, 1939; reargued January 22, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Clement J. Reap,* with him *Guy K. Bard,* Attorney General, for appellant.

*Ralph W. Rymer* and *James K. Peck,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 25, 1940:

The Commonwealth has appealed from an order discharging its rule for judgment for want of a sufficient affidavit of defense to its scire facias sur lien upon a settlement for state capital stock tax and corporate loan tax. The facts of the case are set forth in the affidavit of defense.

In October, 1915, the auditor general settled the capital stock tax of Central Realty Company, for a period ending November 1, 1914, in the amount of $250, and the corporate loan tax of the same corporation, for the year 1914, in the amount of $576.92. However, no certified copy of the lien was transmitted for indexing to the prothonotary of Lackawanna County, where the corporation had its place of business and owned a large tract of real estate, for nearly twenty-two years. During this interval the state authorities took no steps to collect the taxes. On September 27, 1937, the certified liens were filed in Lackawanna County, and the scire facias sur lien was issued against the corporate taxpayer, with notice to the present terre-tenant, Williams Bakery Company, the appellee in this court. The amount of the taxes claimed, $826.92, with statutory interest and attorney's commission, brings the total to approximately $3,300.

During the twenty-two years interval the property changed hands several times. In March, 1916, the taxable, Central Realty Company, conveyed a portion of the tract subject originally to the lien to Sall Mountain Company, which in turn conveyed it to Williams Ice Cream Company in 1920. Appellee acquired a small portion from the latter in December, 1922, and it is against this parcel that the Commonwealth proposes to levy the entire tax originally assessed in 1915 against the Central Realty Company, although it comprises but a very small fraction of the original tract. Meanwhile Central Realty Company has passed out of existence and its assets have been dissipated, so that there is no hope of appellee's collecting from that company the taxes assessed against it.

Appellee contends that it would be inequitable to permit the Commonwealth, after this long lapse of time, to collect the entire amount of the taxes from the limited land which appellee owns. This contention has appealing force, yet the statutes and the respect we must ac-

cord previous judicial decisions will not permit us to yield to its persuasiveness.

The Act of March 30, 1811, 5 Sm. Laws 228, sec. 12, relating to the settlement by the auditor general of public accounts or taxes due the Commonwealth provided that the amount so settled by the auditor general should "be deemed and adjudged to be a lien from the date of the settlement of such account on all the real estate" of the taxpayer throughout the state. The Act of April 16, 1827, P. L. 471, 9 Sm. Laws 433, sec. 4, provided that the Auditor General should be *"authorized and required* to transmit to the prothonotaries of the respective counties, to be by them entered of record, certified copies of the liens" thereafter arising under the Act of 1811, above quoted. The Act of 1827 was thus mandatory in its provisions as to the transmission of liens for recording in the counties and it was so construed by this court. It was held that if the provision was not complied with and the lien was not filed in the county where the real estate of the taxable was located, subsequent lien creditors took precedence over the claim of the Commonwealth. This Court, *In re Wilson,* 4 Pa. 164, said at page 165: "The account settled by the auditor-general at common law, gave the Commonwealth no lien. The Commonwealth's lien on the land of her debtor is created and exists in pursuance of the acts of the legislature. Both acts are to be taken together. Our legislature have uniformly discountenanced all liens and encumbrances from transactions that do not appear of record. 7 Serg. & Rawle, 73. The Act of 1811 gave the Commonwealth a lien on all lands of the debtor within the state. The Act of 1827 did not abridge that lien, but made it the duty of the auditor-general to file the lien in the county where the debtor resided, for the purpose of notice. Every citizen interested could go there and examine; and if the auditor-general had done his duty, he could have saved the lien of the Commonwealth. The settlement not being placed of record in Washing-

ton County, the lien created by the first act was not notice to judgment creditors. It is the duty of the officers of the state to obey the acts of the legislature. If they disregard them and neglect their duty, they subject the Commonwealth to loss by their negligence." Again, in *Arnold's Est.*, 46 Pa. 277, 280, we held: "Without the notice given by filing a copy of the balance of the account, and having it entered on record, the debt ascertained to be due the Commonwealth may be a lien as against the debtor, but it is inoperative against other lien creditors."

The Act of June 7, 1879, P. L. 112, sec. 14, although it was held not to have repealed the Act of 1811, supra, was so similar to it as to be almost identical. It gave the Commonwealth a lien on the franchises and property, real and personal, of corporations subject to the state taxes imposed by the act, among them a capital stock tax, "from the time the said taxes are due and payable." In *Wm. Wilson & Son Silversmith Co.'s Assigned Est.*, 150 Pa. 285, 24 A. 636, we again sustained the mandatory provision of the Act of 1827, supra, with respect to the filing of liens for Commonwealth taxes in the respective counties, as affected by the Act of 1879, supra, and again held that unless this was done the tax failed of priority as against judgment creditors. We pointed out that the Act of 1811, as well as that of 1879, applied to all public funds or moneys, as well as taxes, of whatever character, due the Commonwealth and settled by the auditor-general, and we declared the following (pp. 289-290) : "The Act of 1827, sec. 4, Purd. 1386, pl. 30, prescribes the duty of the auditor-general in all cases arising under the Act of 1811, and although that act does not declare that the lien shall not prevail if the duty to file a certified copy is not performed, yet we have held that such is the consequence of a noncompliance with the act. . . . Other lien creditors have the same right to notice under the Act of 1879 as under the Acts of 1811 and 1827, and we can see no reason why

the rule of duty applicable in the one class of cases is not equally applicable in the other. . . . Hence the Act of 1827, which prescribes the duty of filing a copy in the county of the debtor is just as applicable to the settlement of taxes under the Act of 1811, whether they are created by that act or by acts of later date. We find nothing in the Act of 1879 which conflicts, or is inconsistent, with this view of the subject. The reasons of public policy, which is averse to secret liens, are quite as applicable against taxes created by the Act of 1879 or any other acts as they were against such liens under the Acts of 1811 and 1827."

As against general creditors of the taxable, however, who had effected no liens against it by entry of judgment or otherwise, we held that the lien of the Commonwealth was entitled to priority, notwithstanding the failure to enter the lien in the office of the prothonotary where the property of the taxable was located: *Goodwin Gas Stove & Meter Co.'s Assigned Est.*, 166 Pa. 296, 31 A. 91. In *Gladden, to use, v. Chapman et al.*, 188 Pa. 586, 41 A. 735, the similar Act of June 1, 1889, P. L. 437, sec. 31, extending the scope of the Act of 1879, supra, was likewise construed to require the entry of the Commonwealth's lien in the county in order to avoid postponement to the claims of judgment creditors of the taxable.

By the Act of June 15, 1911, P. L. 955, an important procedural change in the collection of state taxes was made. As already pointed out, the Act of 1827, supra, sec. 4, was mandatory in nature and "authorized and required" the auditor-general to transmit the certified liens for state taxes or claims to the counties for filing. Section 2 of the Act of 1911, however, merely provided that the auditor-general *"may at any time* transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record, certified copies of all liens for State taxes," etc., and in section 3 of the act it was directed that it should be the "duty"

of the auditor-general to issue to any party applying therefor, upon payment of a fee of 25 cents, a certificate showing "the character and amount of all liens that may be of record in his department against any corporation . . . . under the provisions of this act or any other law of this Commonwealth." The fourth section of the act repealed the fourth section of the Act of 1827, supra. The Act of 1911, supra, was in force when the taxes sought to be collected in the present suit were assessed, and had been in force for some years prior to that time. It may be noted that section 1 of the Act of 1911 substantially reënacted the provisions of the prior Acts of 1811, 1879 and 1889, and directed that "all State taxes imposed under the authority of any law of this Commonwealth now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, company, association, joint-stock association, or limited partnership, shall be a first lien upon the franchise and property, both real and personal, of such corporation, company, association, joint-stock association, or limited partnership, from the date when they are settled by the Auditor General and approved by the State Treasurer; . . .." This section of the Act of 1911, supra (72 PS sec. 3342), was amended by the Act of April 12, 1923, P. L. 63, and has been continued in force by the almost identical provision of section 1401 of The Fiscal Code of April 9, 1929, P. L. 343, as last amended by the Act of June 11, 1935, P. L. 303 (72 PS sec. 1401) ; whereas section 3 of the Act of 1911, supra, has now become section 213 of The Fiscal Code, supra (72 PS sec. 213). These later changes have made no difference, however, in the rule embodied in the Act of 1911, supra, which is still the guide for the fiscal administration by the Commonwealth of its liens for taxes.

That rule is that the necessity for filing the lien in the county where the taxable's real estate is located, which we held was essential to prevail under the Act of 1827,

supra, against other lien creditors, became no longer necessary. It was thenceforth sufficient, in order to establish the lien, for the Commonwealth to settle the tax in the auditor-general's office in Harrisburg. The judgment creditor of or bona fide purchaser from the party against whom the taxes were assessed was thereafter required, for his own protection, to consult the auditor-general's records or indices in the State Capitol, where a search could be obtained for a small fee. The judgment indices in the county could not be exclusively relied upon. The purchaser later received the further protection, in 1929, by Section 1403 of The Fiscal Code, supra, of being entitled, on a bulk sale of 51 per cent or more of the real or personal property of the taxable corporation, to be supplied with a certificate from the Department of Revenue, to be delivered by the seller, showing the payment of all state taxes assessed to the date of transfer: 72 PS sec. 1403. As we pointed out in *Traction Materials Co. v. P., McK. & W. Ry. Co., (No. 1),* 261 Pa. 153, 159, 104 A. 552, the Act of 1911, supra, dispensed with the necessity of filing the lien of record. This change was considered by the Superior Court in *Lewis v. Wyalusing Light, Heat & Power Company,* 62 Pa. Superior Ct. 282, 286, where that court said: "As stated before, the Act of 1911 did away with the requirement of the Act of 1827 which compelled the Commonwealth to transmit a certified copy to the prothonotary of the county to be entered in his office and in lieu thereof it provided that the auditor-general should, upon the payment of a fee of twenty-five cents, give to any one interested a certificate showing the amount of all tax liens against any corporation. In other words, the manner and place of getting information as to State taxes was changed. This was a mere change of procedure and affected no rights. No one has any vested right in a particular remedy. If the records of a certain office are notice to every one as to matters therein appearing, the legislature may, in its wisdom, unless prevented by some

constitutional restriction, at any time provide that thereafter such records shall be kept in some other office. Certainly no one would think that such an act changing the place where one must go for such information in regard to liens of a certain character deprived him of any right. The argument advanced that the Act of 1911 created secret liens and was thus against public policy, deserves no extended notice. Information that may be obtained by application to the auditor-general's office and which is certified by said office for a fee of twenty-five cents can hardly be characterized as secret." In that case liens not filed of record, which became such prior to the passage of the Act of 1911, supra, were disallowed, but those for taxes settled subsequent thereto were accorded priority.

The foregoing statutes and decisions were recently reviewed in *Ferguson's Est.*, 325 Pa. 34, 189 A. 289, at pages 39 to 41. The conclusion is inescapable here that the Commonwealth did all that it was required to do, to establish the priority of its liens for the 1914 taxes, by settling them in the office of the auditor-general prior to sale by the Central Realty Company, the taxable, of the real property now belonging to appellee. Upon settlement the liens attached, and no subsequent legislation has diminished the right of the Commonwealth in respect thereto. The terre tenant cannot be judicially relieved of the consequences of its failure to search the title to the land which it purchased.

As we stated in *Com. v. Lowe Coal Co.*, 296 Pa. 359, 145 A. 916: "State taxes stand on a different basis from local levies; the former are essential to the very 'preservation' of the State itself *(Schoyer v. Comet O. & F. Co.*, 284 Pa. 189, 193 [130 A. 413]) while the latter are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government. So far as general principles enter into the matter, the basic interest of the sovereign authority requires the direct revenues of the Common-

wealth to be so guarded that no lien for state taxes shall be disturbed except by payment, unless some constitutional or statutory rule dictates otherwise." See also *Harper v. Consolidated Rubber Co.*, 284 Pa. 444, 452, 131 A. 356. The industry of capable counsel and our own researches have both failed to find any authority justifying the non-enforcement of the liens in suit. Though years have elapsed since their creation, considerations of laches are inapplicable, for the lien was validly created, its existence continued without any interruption by statutory limitation, and it is now sought to be enforced in an action at law. It cannot, of course, be contended that the claim of the Commonwealth was affected by the statute of limitations applicable to suits between private parties: *Bailey's Est.*, 241 Pa. 230, 88 A. 428; *Troutman v. May*, 33 Pa. 455; *Com., ex rel. City of Reading v. Commissioners of Berks Co.* 109 Pa. 214. The cases cited by appellee deal with the situation which existed prior to the Act of 1911, supra, and hence have no application to the instant question, or with an express statutory limitation on the prosecution of a lien, as was the case in *Mellon's Appeal*, 114 Pa. 564, 8 A. 183. To hold that the liens in the present suit are barred would require us to erect a new statute of limitations against the Commonwealth, and this would be an act of judicial legislation.

The ground on which the court below decided the case cannot be supported on any theory of logical interpretation of the Act of 1929, supra. The court held that the proviso, not appearing in the Act of 1911, supra, but inserted in the almost identical section 1401 of The Fiscal Code of 1929 (72 PS sec. 1401), limited the lien of all state taxes to five years. This section, after declaring all state taxes to be a first lien on the property of the taxpayer and payable first out of the proceeds of any judicial sale of the property, continues: " . . . but the lien of transfer inheritance taxes shall be limited to the property chargeable therewith, and, unless *such*

*taxes* shall be sued for within five years after they are due, they shall cease to be a lien as against any purchaser of real estate." We think it obvious that the words in italics refer only to inheritance taxes and not to all state taxes which receive the status of liens under this section of the act. This construction is borne out in the amending Act of June 11, 1935, P. L. 303, which, among other changes inserted a period before the word "but" and made a new sentence of the proviso we have referred to.

But appellee was entitled to an application of the principle, now well established, that after twenty years from the inception of a claim of this character, even in favor of the Commonwealth, a rebuttable presumption of payment arises in favor of the debtor, or the owner of the property to be charged, which the claimant may overcome, if it can, by evidence of a clear and convincing nature that the taxes in question were in fact not paid. The rule was thus expressed by Justice MITCHELL in *Ash's Est.,* 202 Pa. 422, 424, 51 A. 1030 : "When the commonwealth comes into its courts, it is subject like all other suitors to the established rules of evidence. It must meet the burden of proof, its evidence must be relevant, material, the best attainable, and must be presented in due order under the regular rules of procedure. In all such respects it stands upon the same footing as ordinary litigants. Statutes of limitation do not apply to it. . . . But rules of evidence and legal presumptions are not changed for or against the state as a suitor. A statute of limitation is a legislative bar to the right of action, but the presumption of payment from the lapse of time is not a bar at all but simply a rule of evidence, affecting the burden of proof: *Miller v. Williamsport Overseers,* 17 Pa. Superior Ct. 159. . . . There is no good reason why it should not apply to the commonwealth just as other legal rules and presumptions do. And so it has been ruled. In *Stewart's Est.,* 147 Pa. 383, [23 A. 599], it was held that after forty-two years, a

collateral inheritance tax will be presumed to be paid."
See also *Sargent's Est.*, 89 Pa. Superior Ct. 496, and
*Brankin v. Phila., Newtown & N. Y. R. R. Co.*, 286 Pa.
331, 334, 133 A. 563.

While the affidavit of defense does not in specific lan-
guage set up the defense of payment, the language of
paragraph 10, clause 3, is open to that construction, and
since in claims of this character the burden of proof of
non-payment is, after the lapse of twenty years, cast
upon the plaintiff-claimant, the interest of justice re-
quires that the parties go to a jury on that issue.

The judgment of the court below discharging the rule
for judgment for want of a sufficient affidavit of defense
was correct (but, as already pointed out, not for the rea-
sons given by the court).

The judgment is affirmed.