## Commonwealth v. Corner Realty Co.

*Hirschwald, Goff & Rubin,* for Commonwealth.
*Saul, Ewing, Remick & Saul,* for defendant.

BOK, P. J., April 4, 1941.—This is a case stated. In explanation rather than in criticism, the case stated was dated June 30, 1938, filed on January 24, 1939, and briefed by plaintiff on March 29, 1941. Defendants filed no brief.

The facts coalesce into the following situation:

Corner Realty owned a property which it wished to finance through The Pennsylvania Company. Possibly because the latter did not care to take the bond of another corporation, the following events all took place on the same day, March 27, 1929: Corner Realty deeded the property to one Rothwell under trust conditions, Rothwell executed his bond and warrant and a mortgage upon the property to The Pennsylvania Company, and having done so then deeded the property back to Corner Realty, subject to the encumbrance. Rothwell paid nothing for the property and received none of the mortgage money, which went to Corner Realty. Nor did he receive anything for it when he reconveyed it. Part of the case stated is that Rothwell was not the real owner, but held title only for the purpose of creating the encumbrance, whereas Corner Realty was the real owner and The Pennsylvania Company knew all about it.

The Pennsylvania Company foreclosed in 1933 and bid in the property at sheriff's sale for $50.

In 1937 the Commonwealth filed its lien against Corner Realty for capital stock and corporate loans taxes covering the years 1931 to 1933, both inclusive, and issued a sci. fa. for State taxes upon The Pennsylvania Company. Taxes total $10,991.20, and interest $6,602.81. These taxes were settled before the sheriff's sale on foreclosure.

The trust conditions under which Corner Realty conveyed the property to Rothwell are as follows:

"In Trust nevertheless in his individual name by Indenture bearing even date herewith, to grant and convey the said premises unto The Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee for Sundry Trusts, its successors and assigns, in mortgage to secure the payment in the sum of Four Hundred Thousand Dollars ($400,000.), with interest, and

"In Further Trust forthwith in his individual name by Indenture bearing even date herewith to reconvey the said premises unto the said Corner Realty Company, a corporation, in fee, subject to the aforesaid mortgage debt or principal sum of Four Hundred Thousand Dollars ($400,000.), with interest."

The question is this: Where a corporate owner of real estate conveys it to an individual by deed which recites that he is to create a mortgage in his individual name and to forthwith reconvey the premises to the corporation subject to the said mortgage, was this mortgage in fact created by a predecessor in title to the said corporation so as to subordinate a lien obtained by the Commonwealth of Pennsylvania for capital stock and corporate loan taxes due by the corporation to the lien of the mortgage?

The issue involved as set forth in the case stated is predicated upon the construction of the Act of April 9, 1929, P. L. 343, 72 PS §1401, as amended by the Act of June 3, 1933, P. L. 1474, 72 PS §1401. Section 1401, the relevant part of the Act of 1929, reads as follows:

"All state taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, association, or person, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, and whenever the franchises or property of a corporation, association, or person, shall be sold at a

judicial sale, all taxes, interest, bonus, penalties, and public accounts, due the Commonwealth, shall first be allowed and paid out of the proceeds of such sale, before any judgment, mortgage, or any other claim or lien against such corporation, association, or person . . ."

The Act of 1933, supra, amended the above act by adding the following provision:

"Provided, however, Where the lien of a ground rent, mortgage, or other lien created by or entered against a predecessor in title to such corporation, association, or person is discharged by a judicial sale, the lien of the Commonwealth shall be transferred from the property sold to the fund realized from the sale, and the purchaser shall take free of the lien of the Commonwealth, notwithstanding that the fund may be insufficient to pay all or any part of the same, and on distribution of the fund, the Commonwealth's lien shall be postponed in payment to said lien or liens created by or entered against such predecessor in title, but shall not be postponed in payment to local taxes or municipal claims".

It is upon the construction of this added provision as applied to the facts in the instant case that the issue is framed.

I do not believe that Rothwell, an admitted strawman, can be considered a predecessor in title so as to defeat the Commonwealth's lien for taxes. It may be granted that in Curran's Estate, 312 Pa. 416 (1933), the strawman device was approved insofar as it resulted in creating a real security and making the investment a legal one. That, however, is a far cry from approving the device as a means of evading liability for corporate taxes imposed upon the real and corporate owner.

If the strawman device were used here to avoid the constitutional limitation (article III, sec. 22) against the investment of trust funds in the bonds or stock of a private corporation, it was quite unnecessary. This limitation is directed against personal securities, and a corporate mortgage of real estate is as much a real security as the mort-

gage of an individual: Maroney's Estate, 311 Pa. 336 (1933).

There is no bar to the Commonwealth's lien other than the wording of the Act of 1933, which I believe is no bar at all. The tax lien under the Act of 1929 attaches not when the lien is filed but when the tax is settled: Commonwealth v. Central Realty Co., 338 Pa. 172 (1939). It has also been held that, where a judicial sale does not create a fund sufficient to pay the lien for taxes, the lien is not discharged: Commonwealth v. Lowe Coal Co., 296 Pa. 359 (1929). The lien therefore continued to bind the Corner Realty's land since the tax was settled before sheriff's sale and was not covered by the fund.

Where a corporation itself creates a mortgage, the tax lien is prior to the mortgage lien: Harper v. Consolidated Rubber Co., 284 Pa. 444 (1925).

I find no case decided under the Act of 1933, but I am clear that there is no policy in the law that prefers a technicality of this nature before the substantial justice inherent in facts known to the parties. The Act of 1933 appears to be the legislative crystalization of decisional law established under earlier acts by Sweeney v. Arrowsmith, 43 Pa. Superior Ct. 268 (1910), and Davis v. Seltzer, 313 Pa. 382 (1934), the latter case involving facts arising before the Act of 1933.

Certainly the policy of the law in discarding shadow for substance with regard to local taxes is shown in North Philadelphia Trust Co. v. Heinel Bros., Inc., 315 Pa. 385 (1934), where the court said:

". . . the municipality is not limited [by the Act of 1845 and subsequent Act of March 14, 1865, P. L. 320] to such registered owner as the only person or source from which it may secure payment of the taxes levied or assessed on the property. The law will not permit the real owner to set up an irresponsible party, a straw man, as registered owner, and thereby escape payment of taxes."

And further, in Commonwealth v. Lowe Coal Co., supra:

"State taxes stand on a different basis from local levies; the former are essential to the very 'preservation' of the State itself (Shoyer v. Comet O. & F. Co., 284 Pa. 189, 193), while the latter are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government. So far as general principles enter into the matter, the basic interest of the sovereign authority requires the direct revenues of the Commonwealth to be so guarded that no lien for state taxes shall be disturbed except by payment, unless some constitutional or statutory rule dictates otherwise."

Rothwell's duties as trustee were strictly limited to the creation of the mortgage obligation and to the reconveyance of the property. The transaction involved large sums, but he received nothing and clearly acted for accommodation. He was more an agent acting under instructions from his principal than he was a trustee or real owner. While this did not destroy his legal ability to create a real encumbrance upon the property it should not permit his ephemeral ownership to destroy a tax lien asserted against real ownership. The creation of the mortgage caused no harm, but the destruction of the tax lien would work a real harm to the Commonwealth. Furthermore, if allowed, it might open the door to a general evasion of tax liability.

I, therefore, hold that Rothwell was not a "predecessor in title" to Corner Realty, as that term is intended in the Act of 1933. Judgment must follow, and in accordance with the case stated it shall not operate as a personal judgment against The Pennsylvania Company but shall only constitute a lien against the real estate described in the sci. fa. sur State tax.

Judgment is accordingly entered in favor of the Commonwealth of Pennsylvania in the sum of $17,594.01. Costs to follow the judgment.

*Opinion sur exceptions*

BOK, P. J., May 1, 1941.—We see no need to retrace the ground already covered in the opinion of the trial

judge, and we adopt it as the opinion of the court in banc. One or two matters raised at the argument, however, require further attention.

It is defendant's contention that, since it is the policy of the law to make the real, or beneficial, owner pay the taxes, there could be no purpose behind the Act of 1933 if it were not to broaden the rule of an owner's liability and include any record owner, whether real or straw, unless doing so would permit the evasion of tax liability. Without speculating on legislative intent, it is the last part of the argument that destroys defendant's case, since a literal construction of the words "predecessor in title" would have the effect here of permitting an evasion of tax liability. Defendant, in not quite so many words, seeks to draw a distinction between wilful tax evasion and a fortuitous but innocent escape from such liability. Since the tax laws have often been held to have letter and no spirit, the delimitations of motive inherent in this distinction would produce such a confusion of authority as to cast real doubt upon the contention that the legislature intended what the defendants say it did. Taking their word "evasion" to include both innocent and wilful avoidance of tax liability, their argument leads them directly to the plaintiff's position, namely that the device used here results in tax evasion, whether it was intended to do so or not.

The better answer, however, it that Rothwell was no real owner at all. It is conceded, of course, that he was the record owner, but he was only that, for his holding was expressly restricted to the creation of the mortgage and return of the property. All prerogatives of beneficial ownership were denied him. He had only a trustee's title so limited as to make his trust naked if not altogether dry. This, in our opinion, is too narrow a channel through which to pour the broad policy of the law to regard tax relationships only in connection with real or beneficial ownership. We purposely state the policy thus generally, for, while the Act of 1933 may have the effect of fasten-

ing tax liability upon a mere record owner, that is a very different matter from saying that it should have the opposite effect, namely, to break the continuity of tax liability and discharge it.

We are not impressed by the argument that our decision would create a hardship on the mortgagee or the holders of participation bonds. An investor can expect to make some research into his investment; he must take care or take advice or take the consequences. Particularly here, the defendant trustee knew all about the situation and could have informed the holders of participation bonds or answered if asked. And, since the defense of laches does not run against the sovereign, it makes no difference that the taxes were settled on September 18, 1933, and not reduced to lien until November 16, 1937. The settlement of the taxes was at least a warning that the law might be interpreted in a variety of ways.

The exceptions are dismissed.